1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

BUNGIE, INC.,

9

Plaintiff,

10

v.

11

JOSHUA FISHER, JACOB W.
MAHURON A/K/A "PRAGMATICTAX,"
12  MATTHEW ABBOTT A/K/A "NOVA,"
DAVID HASTINGS A/K/A "J3STER,"
13  TRAVERS RUTTEN A/K/A
"TRAVERS7134," JESSE WATSON
14  A/K/A "JESSEWATSON3944," JOHN
DOE NO. 1 A/K/A "CALC" JOHN DOE
15  NO. 2 A/K/A "CYPHER," JOHN DOE
NO. 3 A/K/A "KHALEESI," JOHN DOE
16  NO. 4 A/K/A "GOD," JOHN DOE NO. 5
A/K/A "C52YOU," JOHN DOE NO. 6
17  A/K/A "LELABOWERS74," JOHN DOE
NO. 7 A/K/A "FRAMEWORK," JOHN
18  DOE NO. 8 A/K/A "SEQUEL," JOHN
DOE NO. 9 A/K/A "1NVITUS," JOHN
19  DOE NO. 10 A/K/A "SINISTER," AND
JOHN DOES NO. 11-50,

20

21

Defendants.

Case No.

**COMPLAINT FOR (1) COPYRIGHT
INFRINGEMENT, (2) CIVIL RICO
VIOLATIONS, (3) DMCA VIOLATIONS,
(4) CFAA VIOLATIONS, (5) BREACH
OF CONTRACT, (6) INTENTIONAL
INTERFERENCE WITH
CONTRACTUAL RELATIONS AND (7)
CIVIL CONSPIRACY**

JURY DEMAND

22

23

24

25

26

Plaintiff Bungie, Inc. ("Bungie"), as and for its complaint against Defendants Joshua

Fisher, Jacob W. Mahuron a/k/a "PragmaticTax," Matthew Abbott a/k/a "Nova," David Hastings

a/k/a "J3ster," Travers Rutten a/k/a "travers7134," Jesse Watson a/k/a "jessewatson3944," John

Doe No. 1 a/k/a "calc", John Doe No. 2 a/k/a "Cypher," John Doe No. 3 a/k/a "Khaleesi," John

COMPLAINT - 1

Doe No. 4 a/k/a "god," John Doe No. 5 a/k/a "c52you," John Doe No. 6 a/k/a "lelabowers74," John Doe No. 7 a/k/a "Framework," John Doe No. 8 a/k/a "Sequel," John Doe No. 9 a/k/a "1nvitus," John Doe No. 10 a/k/a "Sinister," and John Does No. 11-50, respectfully alleges as follows:

## INTRODUCTION

1. The days of *Destiny 2* cheaters being free to engage in a wholesale assault on the *Destiny 2* game and its community without fear of consequences are over.

2. Defendants (collectively, the "Ring -1 Enterprise") are the developers, marketers, customer support staff, and sellers of the Ring -1 cheat software (the "Ring -1 Cheat"), who work together to enable that assault via the Ring -1 Cheat.

3. Over the past several years, Bungie has filed a series of successful lawsuits targeting not individual cheaters, but the corporate entities and individuals who profit from making, selling, supporting, and otherwise proliferating malicious cheat software that attacks *Destiny 2*, its flagship game.

4. As explained in those lawsuits, and further detailed below, the proliferation of cheating is a direct threat to the success – social, commercial, and artistic – of *Destiny 2*.

5. The judgments Bungie obtained in those lawsuits have repeatedly confirmed that the sale and use of cheat software violates a raft of federal and state laws, breaches users' contracts with Bungie (the Limited Software License Agreement, or "LSLA," that governs access to *Destiny 2*), and is a basis for significant tort liability.

6. Cheat manufacture and sale has already been repeatedly found to violate copyright law, the DMCA's anticircumvention provisions, the LSLA, and – when the individuals and entities involved are sufficiently organized to satisfy the enterprise requirements, as these Defendants are – even RICO.

COMPLAINT - 2

7.      Bungie's litigation, and litigation victories, have not gone unnoticed; they have been widely covered in the gaming industry press and beyond.

8.      Defendants, in other words, have been more than placed on notice that their conduct is tortious, wrongful, and in fact illegal, and have had every opportunity to voluntarily cease it.

9.      Instead, the Ring -1 Enterprise has deliberately and willfully continued to engage in that conduct, secure in the belief that they can avoid consequences for it.

10.     And the Ring -1 Cheat is particularly dangerous, predicated on an insidious misuse of the hypervisor layer of users' operating systems that puts their computers and others' at risk.

11.     Bungie thus brings this action against the Ring -1 Enterprise, to enforce its contractual and intellectual property rights, maintain the integrity of its product, recover for its losses, and defend its player base by preventing Defendants from continuing to engage in the conduct that threatens its product and players.

## PARTIES

12.     Plaintiff Bungie, Inc. is a Delaware corporation with its primary place of business at 550 106th Avenue NE, Suite 108, Bellevue, Washington 98004.

13.     Defendant Joshua Fisher is a United Kingdom national, residing at 115 Rough Road Birmingham B44 0UR.

14.     Upon information and belief, Fisher is the sole proprietor of Paydash

15.     Upon information and belief, Paydash acted as middleman reseller and payment processing service for Ring -1.

16.     Upon information and belief, presumably to obfuscate Fisher's involvement in the transaction, Paydash's terms of use require customers to certify that they are buying the Ring -1 cheat from Paydash.

COMPLAINT - 3

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

17.     Defendant Jacob W. Mahuron a/k/a "PragmaticTax" is a support staffer residing in Delaware, that uses the username "PragmaticTax" on the Ring -1 forums.

18.     Upon information and belief, Mahuron used the account PragmaticTax#9698 with the ID of 362515273439248384 in the Ring -1 Discord.

19.     Defendant Matthew Abbott a/k/a "Nova" is a support staffer residing in West Virginia that uses the username "Nova" on the Ring -1 forums.

20.     Upon information and belief, Abbott used the account Nova®#8447 with the ID of 432961753920438284 in the Ring -1 Discord.

21.     Defendant David Hastings a/k/a "J3ster" is a support staffer, whose residence is currently unknown, that uses the username "J3ster" on the Ring -1 forums.

22.     Upon information and belief, Hastings used the account ♂ Jester ♂#0530 with the ID of 468595190190571523 in the Ring -1 Discord.

23.     Defendant Travers Rutten a/k/a "Travers7134" is a Ring -1 reseller residing in Brisbane, Queensland, Australia.

24.     Upon information and belief, Rutten resells Ring -1 through the website store.whysp.org.

25.     Upon information and belief, Rutten provides support for the Ring -1 cheat through the whysp Discord server.

26.     Defendant Jesse Watson a/k/a "jessewatson3944", whose residence is currently unknown, is a Ring -1 reseller.

27.     Upon information and belief, Watson sells the Ring -1 cheat through the Softaim Express Discord server.

28.     Defendant John Doe No. 1 a/k/a "calc", is an administrator, whose true identity is currently unknown, that uses the username "calc" on the Ring -1 forums.

29.     Upon information and belief, calc is one of the individuals developing cheats for Ring -1.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

30. Defendant John Doe No. 2 a/k/a "Cypher" is a site operator and staff member, whose true identity is currently unknown, that uses the username "Cyper" on the Ring -1 forums.

31. Upon information and belief, Cypher used the account Cyper#0344 with the ID of 811954504606023710 in the Ring -1 Discord.

32. Upon information and belief, Cypher also used the account Cyper#4753 with the ID of 853198311186759681 in the Ring -1 Discord.

33. Defendant John Doe No. 3 a/k/a "Khaleesi" is a support staffer, whose true identity is currently unknown, that uses the username "Khaleesi" on the Ring -1 forums.

34. Upon information and belief, Khaleesi used the account Khaleesi#3153 with the ID of 652686479847456789 in the Ring -1 Discord.

35. Defendant John Doe No. 4 a/k/a "god" is a support staffer, whose true identity is currently unknown, that uses the username "god" on the Ring -1 forums.

36. Upon information and belief, god used the account Foreign#0666 with the ID of 826829028043390997 in the Ring -1 Discord.

37. Defendant John Doe No. 5 a/k/a "c52you" is a Ring -1 cheat developer, whose true identity is currently unknown, that uses the username "c52you".

38. Defendant John Doe No. 6 a/k/a "lelabowers74" is a Ring -1 cheat developer, whose true identity is currently unknown, that uses the username "lelabowers74".

39. Defendant John Doe No. 7 a/k/a "Framework" is an administrator on the Ring -1 site, whose true identity is currently unknown, that uses the username "Framework" on the Ring -1 forums.

40. Defendant John Doe No. 8 a/k/a "Sequel" is a reseller of the Ring -1 cheat, whose true identity is currently unknown, that uses the username "Sequel" on the Ring -1 forums.

41. Upon information and belief, Sequel runs reseller websites hosted at: Rev1ve.co and ring-1sequel.selly.store

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

42.     Defendant John Doe No. 9 a/k/a "1nvitus" is a reseller of the Ring-1 cheat, whose true identity is currently unknown, that uses the username "1nvitus" on the Ring-1 forums.

43.     Upon information and belief, 1nvitus runs reseller websites hosted at: invitus.selly.store and 1nvituscheats.com.

44.     Defendant John Doe No. 10 a/k/a "Sinister" is a reseller of the Ring-1 cheat, whose true identity is currently unknown.

45.     Upon information and belief, Sinister operates and sells the Ring-1 cheat through a private Discord server.

46.     Doe Defendants Nos. 11-50 are persons and parties whose identities are currently unknown to Bungie, but who, upon information and belief, are both complicit in Defendants' torts and members in fact of Defendants' racketeering enterprise, including cheat developers, resellers, administrators, and other agents of the enterprise.

## JURISDICTION AND VENUE

47.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff asserts claims under federal law, including for copyright infringement, trademark infringement, civil RICO, and violations of the Digital Millennium Copyright Act and the Computer Fraud and Abuse Act, and supplemental jurisdiction over Bungie's state law claims under 28 U.S.C. § 1367(a).

48.     This court has personal jurisdiction over Defendants because Defendants consented to jurisdiction in the state and federal courts in King County, Washington. Upon information and belief, each of the Defendants, or agents acting on their and the Ring-1 Enterprise's behalf, accepted the terms of *Destiny 2*'s Limited Software License Agreement (the "LSLA"), which contains the following forum selection clause: "you agree to submit to the personal jurisdiction of any federal or state court in King County, Washington."

COMPLAINT - 6

49.     Additionally, this court has personal jurisdiction over Defendants pursuant to RCW 26.50.240, the Washington Long-Arm Statute, because the Defendants committed tortious acts that caused Bungie injury in the State of Washington.

50.     Venue is proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants have harmed Bungie in this judicial district, or, in the alternative, 28 U.S.C. § 1391(b)(3), in that Defendants are foreign individuals and entities and therefore do not reside in a district within any state, and, as such, if venue is not proper under 28 U.S.C. § 1391(b)(2), there is no judicial district in which venue would otherwise be proper under Section 1391(b).

## BACKGROUND

### I.     The *Destiny* Franchise

51.     Bungie is the independent developer, owner, intellectual property rights holder, and distributor of the video game *Destiny 2*, and the *Destiny* Franchise.

52.     Wherever people congregate together and share spaces, they play together, tell stories, and socialize.

53.     Countless gamers prize this kind of interaction.

54.     Continuing what Bungie began with Destiny in 2014, *Destiny 2* scratches that itch. Consistent updates, multiple expansions, and constantly refreshed features engage players and keep the community thriving. With Player vs. Environment ("PvE") challenges that can be tackled solo or co-operatively, and Player vs. Player ("PvP") multiplayer modes pitting players against each other in a competition for in-game rewards and reputation, Destiny 2 is played together by tens of millions of players around the world.

55.     Progress in Destiny 2 is not delineated merely by success in its missions[1], quests[2],

---

[1] Campaigns designed to be tackled by 1-3 player teams, which feature a series of objectives.
[2] Multi-step missions that reward players with high-powered loot.

COMPLAINT - 7

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

strikes[3], and raids[4].  Aesthetic rewards and loot, such as better and more powerful items for the player's character, are prizes for sustained play, repeated success, and the hard work a dedicated player puts into their gaming. Some rewards are exclusive to difficult or highly competitive endgame content, and can be shown off by players to other players in order to celebrate their achievements.

56.     However, where communities coalesce around online video games, bottom feeding cheaters who seek unearned victory and ill-gotten trophies, while destroying the gaming experience for everyone else around them inevitably follow.

57.     By artificially altering the game's mechanics and gameplay, cheaters thumb their noses at their fellow players and at the developers who labor to create a fair and positive experience for everyone. In a single player environment, using cheats and hacks impacts only one's own experience of that game. An MMO is different. Cheats and hacks in an MMO affect both other players as well as the game's creator.

58.     What's more, the cheat loaders - the software that deploys the various cheats and hacks into the game - can transform their unwitting users' personal computers into proxies for a slew of illegal activities and render them exceptionally vulnerable to malicious hacking.

59.     Destiny 2's business model relies on players falling in love with the game and coming back for more. Players won't come back when their experience is rife with cheaters trivializing their hard work or victimizing them, or when they risk being banned or missing an opportunity for achievement because a teammate used a cheat[5].

60.     Bungie has expended tremendous time, resources, and effort attempting to counter cheat software such as that developed and sold by the Defendants. Bungie builds and licenses

---

[3] Replayable missions through a series of objectives that end with a battle against a "boss" or other high-power enemy.
[4] Raids are highly challenging endgame PvE content designed to be completable only by groups of players working cooperatively.
[5] Bungie invests significant labor in promoting a fair playing field for the highest levels of in-game achievement, which tends to coalesce around the race for completion of the newest end-game content.

COMPLAINT - 8

cheat detection tools (known as anti-cheat software) at significant cost, and Defendants repeatedly develop against *Destiny*'s anti-cheat software after each significant patch to avoid those anti-cheat measures. Honest players leave the game as their enjoyment of the experience diminishes – users do not want to play a rigged game they can't win without cheating or see their PvE accomplishments trivialized – and that costs Bungie additional revenue. And the money and human resources Bungie must dedicate to catching and preventing Defendants' illegal activity are a necessary but costly expense for a company dedicated to preserving the Destiny experience for its players.

61.     *Destiny* 2 is a shared-world online first-person shooter available across multiple platforms: Playstation 4 and 5, PC, and the Xbox One and Series X consoles.

62.     The *Destiny* franchise has provided players with a thrilling story, a unique sci-fi setting, and beloved gameplay since it arrived on the market.

63.     Since their debut, *Destiny* and *Destiny 2* have been critical and commercial successes.

64.     *Destiny 2* is played by tens of millions of players worldwide.

65.     Since its initial release in 2014, the *Destiny* Franchise has offered its players continuous and consistent expansions and add-ons, which introduce new story content, new gameplay modes, new weapons and items, and new gameplay mechanics.

66.     Following the release of *Destiny 2* in 2017, Bungie continued this model, and has released several expansions, beginning with *Forsaken* and including the most recent, *Destiny 2: Lightfall*, with more on the way.

67.     To bridge the gap between these releases and to continue to provide its thriving player base with additional content to experience, *Destiny 2* also introduced Seasons, in which significant updates to the game are made alongside optional Season Passes that may be purchased to provide players with additional rewards.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

68. The sale of these continued expansions and passes, and of virtual currency that can be redeemed for cosmetic items in-game, serve as essential vehicles of *Destiny 2*'s revenue, as the base game has transitioned to a free-to-play model.

69. For its core gameplay experience, *Destiny 2* offers both Player vs. Environment (PvE) content and Player vs. Player (PvP) content.

70. PvE content allows players to explore *Destiny 2*'s worlds and lore and tackle an epic science fiction story. It pits players against the game itself, with each chapter of the saga and vibrant, distinct world it introduces filled with diverse and challenging enemies to fight, mysteries to explore, and items to collect, hunt, and chase down.

71. *Destiny 2*'s PvE content can be tackled either single-player or cooperatively, allowing players to team up with other players.

72. As *Destiny 2* is an always-online shared world, each player's game will always be populated and impacted by some number of other users, so a potential friend or ally is never too far away.

73. Even where players are not attempting to tackle PvE content together – whether from the outset as part of a planned team or as a result of being matched into an *ad hoc* fireteam[6] to complete a strike – other players in-game can and do attack enemies targeting other players, join in "public events" – mini-missions that feature waves of enemies in particular locations, with the promise of loot for successful completion – or otherwise impact the individual's gaming experience.

74. PvP content presents a more traditional multiplayer experience, allowing players and fireteams to compete against each other.

75. *Destiny 2* utilizes continuous and automatic matchmaking (computerized pairing of players for group content by analyzing availability, skill, and power level), making participation easy, and the competitive gameplay modes are typically quick and action-packed.

---

[6] Small squads of 2-6 players.

COMPLAINT - 10

76.     Regardless of whether players are in PvP or PvE mode, *Destiny 2* gameplay centers around earning rewards to power up or enhance a player's character, enabling access to more content and more difficult challenges.

77.     As players complete quests, strikes, and raids they are rewarded with loot: gear, weapons, and other valuable items, the rarity and power of which can vary widely. Continued and consistent accomplishment in PvE endgame content and in PvP performance earns the player more than prestige in the community; it earns them the most powerful and impactful rewards the game offers.

78.     But *Destiny 2* is more than just another shooter with online components.

79.     No *Destiny 2* player is required to purchase anything at all to play the game; the base game is available to anyone, on most major gaming platforms, who wants to download it. Instead, players pay Bungie for additions to the base game: downloadable content including expansions (additional campaigns and storylines), seasonal content, in-game currency ("Silver," which players can purchase for real money and use in the *Destiny 2* world to "purchase" cosmetic items for their characters), and other in-game features and additions.

80.     In other words, unlike a boxed-game model which generates revenue by retailing standalone versions of games, Bungie generates revenue from *Destiny 2* if and only if it is such a successful and immersive experience that users who play the base game for free find it so compelling and enjoyable that they want to buy the additional, optional content.

81.     Many consumers become disincentivized to buy the additional content if they believe that the game is dominated by unfair competition.

82.     Making *Destiny 2* free-to-play thus represented an enormous bet on the quality of the experience Bungie had developed and the enthusiasm of the community that had flourished around it.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

83.     As such, cheat software such as Defendants', which harms honest users' gaming experience and thereby reduces the time they spend playing *Destiny 2* and their interest in purchasing additional content, has a direct and negative impact on Bungie's bottom line.

## II.     Bungie's Efforts to Prevent Cheating

84.     Because cheating has such negative consequences to Bungie – financially and reputationally – and to its player community, Bungie expends considerable effort and resources to prevent it.

85.     First, Bungie's license agreement, which every user who downloads *Destiny 2* must agree to, expressly prohibits cheating. In executing the LSLA, players specifically agree that they will not, among other things:

- "hack or modify" the game;

- "receive or provide 'boosting services,'[7] to advance progress or achieve results that are not solely based on the account holder's gameplay"; or

- "create, develop, modify, distribute, or use any unauthorized software programs to gain advantage in any online or multiplayer game modes."

86.     Bungie bans players who use cheats or hacks.

87.     Bungie engages in a "defense in depth" approach to cheat detection and removing cheaters from its servers, using multiple layers of defense to protect *Destiny 2*.

88.     Bungie employs several measures to deny banned players from accessing Destiny 2, including rejecting attempts to log in from banned accounts, and incorporating

---

[7] Bungie users have Bungie accounts that they log in to in order to play *Destiny 2*, build statistics and accomplishments, and progress their characters. "Boosting services" typically involve a user paying a third party "professional gamer" to access their Bungie account and play *Destiny 2* for them, so that their character's progress instead reflects the work and skill of the "ringer" who accessed the account. Most such providers are likely not skilled: Bungie has detected significant overlap between boosting services and cheat software, enough that the price of cheat software appears to be a driver of the price of boosting services.

COMPLAINT - 12

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

measures to detect and reject attempts by banned players to create and play using new, fraudulently created accounts.

89.     One such measure is to check the Hardware ID ("HWID") of a computer that is connecting to the *Destiny 2* servers against a list of banned HWIDs.

90.     Bungie has developed cheat detection software.

91.     Bungie employs multiple specialists on their anti-cheat team.

92.     Over the years, and out of necessity as the ability to create free-to-play accounts drew more cheating, Bungie has expanded its anti-cheating efforts with additional resources and licensed anti-cheat tools.

93.     Bungie employs multiple security specialists who work with their anti-cheat team.

94.     In the absence of relief against these Defendants, Bungie anticipates that it will need to devote ever increasing personnel and resources to their anti-cheat efforts, incurring more costs.

95.     Bungie's anti-cheat team flags and identifies how cheaters are attacking the game through constant monitoring of the *Destiny 2* system and how players are interacting with it.

96.     Bungie's anti-cheat team must review and investigate reports of cheating submitted by *Destiny 2* players in order to remain informed as to how the cheaters are attacking the game.

97.     Bungie's anti-cheat team must routinely update the game client to mitigate and counter cheating.

98.     Bungie's anti-cheat team must routinely improve *Destiny 2*'s systems to make it harder for cheaters to identify and attack game elements.

99.     Bungie expends significant effort balancing new anti-cheat measures with user experience and connectivity.

100.    For every security-related update, the anti-cheat team is routinely pulled into QA and support issues to identify actual issues from red herrings.

COMPLAINT - 13

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

101.   By necessity, many of Bungie's anti-cheat team activities are reactive.

102.   Because it is a reactive process, Bungie's anti-cheat efforts require constant vigilance.

103.   That, in turn, requires continual investment in costly third-party tools.

104.   All this makes the cost of defending the *Destiny 2* system from cheaters exorbitant.

105.   Bungie spends seven-figures per year on its anti-cheat measures, a sum that does not include the cost to Bungie of external expert resources, legal costs, forward-looking investments in anti-cheat infrastructure, or infrastructure costs used for but not exclusively dedicated to game security.

**III.    Defendants' Cheat Software**

106.   Defendants develop, market, and sell *Destiny 2* cheat software designed to circumvent Bungie's cheat detection efforts.

107.   Defendants continuously test and update their software to avoid detection.

108.   Upon information and belief, doing so requires the Ring -1 Enterprise to access and play *Destiny 2*.

109.   Upon information and belief, Defendants' cheat software utilizes an exploit in the Windows and Intel processor framework ("Hypervisor").

110.   Hypervisor, also referred to as a virtual machine monitor or virtualizer, is a type of computer software, firmware, or hardware that manages virtual machines and virtualizations.

111.   Virtual machines and virtualization provide users the ability to create and manage a sub-computer from within an existing computer, which can be used in the same way as the host computer but can be created and destroyed at will.

112.   Hypervisor is used to allow multiple sub operating systems to use and share hardware resources such as hard drive(s), RAM, processor(s), and graphics cards.

COMPLAINT - 14

113.    The cheat software uses this exploit to turn off hardware protections and run a modified version of Hypervisor.

114.    The Ring -1 cheat then runs within a virtualized environment to prevent detection by Bungie's anti-cheat measures.

115.    This exploit process is only available to customers playing *Destiny 2* on a Windows 10 or Windows 11 operating system with an Intel processor.

116.    This is because computer operating systems maintain system integrity through "protection rings" designed to give programs access to only functions and data that they need, ranging from Ring 0 (most privileged) to Ring 3 (least privileged), and which are typically enforced by the processor. Intel processers have an additional "Ring -1" protection ring that allows a virtual operating system to natively run Ring 0 commands as well as additional machine code instructions without affecting other virtual operating systems or the primary operating system.

117.    The Ring -1 cheat gets its name from how it takes advantage of this Intel-only protection ring.

118.    Upon information and belief, the modified version of Hypervisor relies on page faults in memory.

119.    Upon information and belief, the modified version of Hypervisor catches the memory exception normally handled by the operating system and uses it to run its own code and generate new *Destiny 2* data.

120.    The falsified data is then passed to *Destiny 2*'s memory space to send to the main *Destiny 2* servers.

121.    The Ring -1 cheat software contains four major components, one which provides software-assisted boosting to aiming and targeting functions (the "Aimbot"), one that reveals information normally hidden during gameplay (the "Character ESP"), one that provides a

COMPLAINT - 15

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

customizable radar (the "Radar"), and one that modifies the basic mechanics of *Destiny 2* gameplay (the "Misc").

122.    The Aimbot allows the cheat software to control the aiming and targeting system used by *Destiny 2*.

123.    By and through this control, the Aimbot ensures that a player can lock onto and hit any target the player wants.

124.    The Aimbot can be configured for fully automatic use or semi-manual control.

125.    The Aimbot cheat contains multiple features designed to prevent detection by Bungie's cheat detection systems.

126.    This includes target switch delays after a kill, aim smoothing, and visibility checks.

127.    As such, the Aimbot is a technology that is primarily produced for, and has limited commercially significant use other than, circumventing a technological measure controlling access to, and protecting Bungie's rights in, the *Destiny 2* game.

128.    The Character ESP cheat generates an overlay to the *Destiny 2* interface.

129.    Using the Character ESP cheat, a player can see both other players and non-player characters ("NPC") that are further away than *Destiny 2* allows.

130.    Using the Character ESP cheat, a player can see both other players and non-player characters ("NPC") through walls and other visual obstacles.

131.    This overlay contains information about both player characters and non-player characters such as their health.

132.    This overlay presents the cheater with a game display – and experience – that is radically different from the one Bungie created and intended to display to players.

133.    Thus, the cheater is looking at a separate derivative display than the display presented by the game.

134.    A cheater is also experiencing a different audiovisual work than the work

COMPLAINT - 16

1  presented by the game.

2      135.   In order to enable the *Destiny 2* game to operate correctly and smoothly, that

3  information has to be available within the *Destiny 2* client's memory space.

4      136.   But in order to maintain *Destiny 2*'s intended play-balance, that data cannot be

5  visible to *Destiny 2* players.

6      137.   Moreover, the Character ESP cheat obtains the information it displays from the

7  *Destiny 2* client's memory space.

8      138.   Thus, to accomplish both objectives, Bungie encrypts and obscures that data

9  during the normal operation of the game, so that the program has access to it but the players and

10  any malicious software on the players' computers do not.

11      139.   The Character ESP cheat breaches the protections Bungie has placed around that

12  data in order to display  an unauthorized overlay based on the data to the cheat user.

13      140.   As such, the Character ESP cheat is a technology that is primarily produced for,

14  and has limited commercially significant use other than, circumventing a technological measure

15  controlling access to, and protecting Bungie's rights in, the Destiny 2 game.

16      141.   The Radar cheat provides an overlay to the *Destiny 2* interface with a 2D radar.

17      142.   The Radar cheat differs from Character ESP in that also shows the location of

18  enemies behind a player.

19      143.   This overlay also presents the cheater with a game display and experience that is

20  not the one Bungie created and displays to its players.

21      144.   And, like the Character ESP cheat, it does so by accessing and de-obfuscating (or

22  decrypting) Bungie's protected and obscured game data.

23      145.   As such, the Radar cheat is a technology that is primarily produced for, and has

24  limited commercially significant use other than, circumventing a technological measure

25  controlling access to, and protecting Bungie's rights in, the Destiny 2 game.

26      146.   The Misc cheats allows the cheat software to bypass the mechanics of *Destiny 2*'s

COMPLAINT - 17

1    gameplay, removing key limitations Bungie uses to balance that gameplay.

2          147.    The Misc's Weapon cheat gives users infinite ammunition.

3          148.    The Misc's Weapon cheat removes all weapon recoil.

4          149.    The Misc's Weapon cheat has a rate of fire modifier, allowing a player to increase

5    how quickly they fire.

6          150.    This includes a "full auto" mode.

7          151.    The Misc's Player cheat includes a speed hack, allowing a player to move faster

8    than the game's mechanics allow.

9          152.    The Misc's Player cheat allows players to fly in areas where they would typically

10    not be allowed to.

11          153.    The Misc's Player cheat allows a player to instantly revive after death.

12          154.    The Misc cheat includes a "ONE POSITION KILL" hack that allows a player to

13    kill everyone, player and NPC, from a single position.

14          155.    The ONE POSITION KILL cheat has no limitations for visibility or obstacles

15    between the player and target.

16          156.    The Misc cheat as a whole, and particularly the ONE POSITION KILL cheat,

17    create a game experience and display that are radically different from that created by Bungie.

18          157.    As such, the Misc cheat is a technology that is primarily produced for, and has

19    limited commercially significant use other than, circumventing a technological measure

20    controlling access to, and protecting Bungie's rights in, the Destiny 2 game.

21          158.    Many of these cheats are "streamproof," or designed to operate in the background

22    invisibly while the user streams video of their gameplay in order to hide from a viewing audience

23    that the player is cheating.

24          159.    These features, together and separately, provide players with a substantial

25    competitive advantage and the ability to appear like legitimate players in front of an audience.

26

COMPLAINT - 18

160.     These features and the advantages they provide are not available to users who do not cheat.

161.     Defendants sell their cheat software to users who buy monthly subscriptions to the cheat software.

162.     Defendants develop and provide an additional cheat software known as the HWID Spoofer + Cleaner ("HWID Spoofer").

163.     The HWID Spoofer allows a banned person to change the Hardware ID of their computer to bypass the Hardware ID checks Bungie uses to restrict access to Destiny 2.

164.     The HWID Spoofer includes a Trace Cleaner.

165.     The Trace Cleaner is used to remove Trace information used by anti-cheat mitigation software to detect previously banned players.

166.     In its totality, the HWID Spoofer is software created solely and intentionally to allow banned players continued access to copyright-protected software and audiovisual works they are barred from using by circumventing the technical measures Bungie imposes to prevent their unauthorized access to *Destiny*.

167.     Defendants provide routine and specific support to the cheats they sell.

168.     Defendants, through social media and popular websites like YouTube, market and advertise their cheats, inducing players to buy.

169.     For example, a YouTube video posted by Defendant "Sinister" as part of his efforts to market the cheat for his personal profit contains a two-minute video that demonstrates the separate cheats that are part of the Ring -1 package.[8]

170.     Defendants maintain a website that assures players that they are experienced and long-term cheat developers.

171.     Defendants assure cheaters that their software is difficult to detect and that they work around or bypass opposing anti-cheat measures.

---

[8] https://www.youtube.com/watch?v=0fO_PO26wKM

COMPLAINT - 19

172. Upon information and belief, Defendants must play *Destiny 2* to develop and test their cheats; they themselves are cheaters.

173. Each cheater violates the LSLA every time they cheat.

174. Each cheater circumvents Bungie's anti-cheating measures every time they cheat.

175. By purchasing and loading cheats they have purchased from Defendants, cheaters break the balance and integrity of Destiny 2's gameplay.

176. Cheaters find unearned success, quicker access to rewards, and overwhelming advantage in competition.

177. Defendants advertise their cheats to a wide audience.

178. Defendants use "authorized resellers" to further propagate their cheats through third-party wholesalers.

179. Upon information and belief, Defendants propagate their cheats through: Elitecheatz.co, Rev1ve.co, empirecheats.com, cobracheats.com, intensitygaming.xyz, dynamicgaming.xyz, GoldenCheats.ru, Ringstore.me, cosmocheats.com.

180. Their cheats flagrantly alter and destroy the gameplay experience.

181. Aimbots, display enhancements, and other cheats give significant competitive advantages in PvP modes.

182. Human players cannot compete with opponents who can operate outside not just the rules of the game, but the confines of the game's software.

183. These illicit competitive advantages bring unearned wins.

184. Repeated success bought by cheating concentrates users at a level of gameplay inhabited by the most invested of *Destiny 2*'s legitimate players.

185. This concentration creates a perverse disincentive for the games' most dedicated players; the harder they work, the better they get, the more cheaters they face, and the less reward they can expect to achieve.

COMPLAINT - 20

186.    This destroys the integrity of PvP gameplay modes, allowing cheaters to steal wins from more skilled players.

187.    Similar cheats can also trivialize endgame PvE content, making the game's most difficult enemies and raids simple.

188.    What once required community, discipline, skill, and innovation is reduced to a mere transaction for a cheater.

189.    Cheaters thus accumulate ill-gotten rewards, from the game's most powerful items to special in-game prizes and status symbols, to actual physical rewards through Bungie's Rewards program.

190.    Players attempting to obtain these accomplishments legitimately are aware that cheaters are cheating to obtain them.

191.    These players experience tremendous frustration.

192.    They write articles about *Destiny 2*'s "problem with cheaters."

193.    Sometimes, they stop playing *Destiny 2* altogether.

194.    Bungie's anti-cheat technological measures are developed to protect player data and game data, and to prevent outside influences from rewriting, changing, or manipulating any of the above.

195.    This anti-cheating technology is built into the game, requiring cheaters to circumvent it in order to cheat.

196.    The cost of cheating in lost players is significant.

197.    The cost of cheating in banned players is significant.

198.    The cost of cheating in the expense of policing cheating is significant.

199.    The cost of cheating in the expense of licensing and developing anti-cheat technological countermeasures is significant.

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

**DEFENDANTS' WILLFULNESS**

200.    Upon information and belief, Defendants are fully aware that their conduct is tortious and illegal.

201.    Defendants take active steps to conceal their identities, including operating under monikers and using a middleman intermediary to payment processors.

202.    Upon information and belief, Defendants used Paydash as an intermediary between Ring -1 and their customers.

203.    Upon information and belief, Paydash purported to act as a payment processor for purchasing the Ring -1 cheat directly from Ring -1's developers.

204.    Customers had to check a box acknowledging that they were not actually purchasing from Ring -1, but rather from Paydash.

205.    Upon information and belief, this additional step was to obscure the nature of the goods and services being sold.

206.    Upon information and belief, Paydash reported having £0 in assets upon filing for insolvency April 2022.

207.    Upon information and belief, all of Paydash's funds were being used to pay the developers and staff of Ring -1.

208.    Upon information and belief, Defendants have gone to great lengths to hide their identities in the misplaced belief that doing so would shield them from liability for their illegal and tortious conduct.

209.    By June, 2021, Bungie had sued one cheat developer (GatorCheats) and had sent cease and desist letters to others.

210.    Upon information and belief, in July 2021, the Defendants closed their Discord server.

211.    Upon information and belief, in August 2021, the forum accounts for 3 administrators (Berserker, Krypto, Overpowered) were deleted from the site.

COMPLAINT - 22

212.   Upon information and belief, these accounts were years old prior to deletion.

213.   Upon information and belief, the deleted administrator accounts contained help guides and customer assistance communications.

214.   As noted above, Bungie has obtained repeated and publicly known court decisions confirming as much, and upon information and belief Defendants are aware of those decisions.

215.   Indeed, Bungie brought claims against other members of the Ring -1 Enterprise in July 2021, and these members were cut off like deadwood and left to fend for themselves by the Ring-1 Enterprise once publicly identified.

216.   Upon information and belief, Defendants were specifically aware of that suit and have continued to develop, update, and sell the Ring -1 Cheat as members of the Ring -1 Enterprise.

217.   Upon information and belief, the Ring -1 Enterprise has created multiple communication channels on Telegram (a mobile application for private encrypted messaging).

218.   Upon information and belief, the Ring -1 Cheat is still available in Defendants' cheat loader.

219.   Upon information and belief, the Ring -1 Cheat still loads successfully when activated through the cheat loader.

220.   Upon information and belief, Defendants are still supporting the *Destiny 2* Ring -1 Cheat and making it available to users who previously purchased it.

221.   Upon information and belief and given the nature of Defendants' cheat software and their subscription pricing model, the Ring -1 Cheat cannot load unless Defendants' server authenticates the user's keys and confirms the user has an active subscription.

COMPLAINT - 23

## FIRST CAUSE OF ACTION
### (Copyright Infringement)

222.    Bungie repeats and realleges the allegations of Paragraphs 1-221 of this Complaint as though fully set forth herein.

223.    Bungie is the holder of multiple copyright registrations for *Destiny 2*, including Registrations No. TX 8-933-655, TX 8-933-658, and TX 9-130-251 covering the *Destiny 2*, *Destiny 2: Beyond Light*, and *Destiny 2: The Witch Queen* software, Registrations No. PA 2-282-670 and PA 2-280-030, covering *Destiny 2* and *Destiny 2: Beyond Light* as audiovisual works, and Registrations No. TX 9-284-685 and PA 2-419-993 covering *Destiny 2: Lightfall*.

224.    Defendants' cheat software infringes Bungie's exclusive right to create derivative works of *Destiny 2*, in two ways.

225.    First, upon information and belief, Defendants' cheat software works via memory injection, utilizing code designed to hook onto and hijack specific pieces of *Destiny 2* code covered by Registration No. TX 8-933-655.

226.    Upon information and belief, Defendants' *Destiny 2* cheat software only works within, and in conjunction with and as an emendation of, Plaintiff's copyrighted *Destiny 2* code.

227.    As such, Defendants *Destiny 2* cheat software is a derivative work of *Destiny 2*.

228.    In addition, Defendants' *Destiny 2* cheat software creates visual elements that are displayed as an overlay on, and within, the *Destiny 2* visual display.

229.    Indeed, Defendants' "ESP" feature creates a visual overlay on the *Destiny 2* graphics, displaying for the cheater the location of enemies (including, in PvP mode, other players), and other annotations and highlights absent from the display Bungie provides to players.

230.    The combined audiovisual work displayed to the user by the interaction between Bungie's *Destiny 2* software and Defendants' cheat software is based on Bungie's copyrighted *Destiny 2* audiovisual work.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

231.    As such, Defendants infringe Bungie's copyright in *Destiny 2* as an audiovisual work each time that their cheat software creates an unauthorized derivative work of *Destiny 2*.

232.    When a player uses the speed or fly hack cheat, the positional data is sent to the *Destiny 2* servers.

233.    The *Destiny 2* servers send this data to other players' *Destiny 2* clients.

234.    This positional data is then rendered onto those *Destiny 2* clients.

235.    This includes the *Destiny 2* clients of players not using cheat software, who see the cheating player flying in places they should not be or moving faster than the game allows.

236.    In the alternative, Defendants induce and enable individual *Destiny 2* players to create an unauthorized and infringing derivative work each time they deploy the cheat software.

237.    Moreover, as alleged in Count Five below, Defendants' creation and distribution of *Destiny 2* cheat software was in violation of the Bungie LSLA.

238.    Upon information and belief, Defendants, or their agents, specifically downloaded *Destiny 2* for purposes of creating cheat software in violation of the LSLA.

239.    Because Defendants never intended to adhere to the LSLA terms, their initial downloads of *Destiny 2*, which enabled their creation of the cheat software, was unauthorized and infringing.

240.    Defendants' copyright infringement was knowing and willful.

241.    Upon information and belief, Defendants were aware at all times of the high probability that their creation of cheat software based on and in connection with Bungie's copyrighted *Destiny 2* software, and which annotated and amended the *Destiny 2* audiovisual display, infringed Bungie's copyrights.

242.    Defendants' infringement was for commercial gain.

243.    Defendants sell licenses to their cheat software for $59 per month for the basic package, $119 for the PRO package.

COMPLAINT - 25

244. The basic package comes with the Aimbot, Character ESP, and only the infinite ammo cheat from the Misc section.

245. The PRO package comes with additional Aimbot, Character ESP, and Misc features.

246. The rate of fire modifier, speed hack, fly hack, instant revive, and "One Position Kill" from the Misc cheats are only listed on the PRO package.

247. The PRO package additionally comes with the Radar functionality.

248. Upon information and belief, Defendants have sold more than $1,000 of cheat software during at least one 180-day period.

249. Bungie has incurred and will continue to incur enormous expense as a result of Defendants' copyright infringement.

250. Bungie has lost considerable revenue as a result of Defendants' copyright infringement.

251. As a result of the foregoing, Bungie is entitled to an award of actual damages in an amount to be proven at trial.

252. Alternatively, Bungie is entitled to maximum statutory damages of $150,000 for each copyrighted work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

253. Bungie is entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

254. As a result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to contribute to infringement of Plaintiff's copyrights. Plaintiff is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1
2

## SECOND CAUSE OF ACTION
### (Civil RICO, 18 U.S.C. § 1962(a), (b), & (c))

3      255.    Bungie repeats and realleges the allegations of Paragraphs 1-254 of this

4  Complaint as though fully set forth herein.

5      256.    Defendants have derived income from a pattern of racketeering activity.

6      257.    Defendants have reinvested all or a part of that income in an enterprise which is

7  engaged in activity affecting interstate commerce.

8      258.    The Ring -1 Enterprise, their agents, and employees, the related cheat sites they

9  have operated, together with the participants in "reseller" program and the Paydash payment

10 processor, for purposes of predicate acts of criminal copyright infringement, money laundering,

11 and wire fraud, users of Defendants' cheat software, constitute an association-in-fact.

12     259.    Defendants have participated in the conduct of the Ring -1 Enterprise's affairs

13 through the pattern of racketeering activity detailed below.

14     260.    The Ring -1 Enterprise is engaged in interstate commerce, as, upon information

15 and belief, Defendants' sales are made to individuals in multiple States.

16     261.    The Ring -1 Enterprise is involved in foreign commerce, in that at least some

17 Defendants are based in foreign countries and, upon information and belief, at least some of

18 Defendants' sales are made to individuals in the United States.

19     262.    The Ring -1 Enterprise's activities affect interstate and foreign commerce, in that

20 they affect Bungie's business.

21     263.    Defendants received income from the below described pattern of racketeering

22 activity via the Ring -1 Enterprise's sales of Defendants' cheat software.

23     264.    Upon information and belief, at least some of the income so derived was

24 reinvested in the Ring -1 Enterprise, to, among other things, fund the development, marketing,

25 and sale of cheats, including the *Destiny 2* cheat software.

26

COMPLAINT - 27

265.    Upon information and belief, Defendants maintain control of the Ring -1 Enterprise via the income derived from the below described pattern of racketeering activity.

266.    The Ring -1 Enterprise's pattern of racketeering activity is longstanding, continuing, and has targeted and damaged multiple businesses and game developers, including Bungie.

267.    Upon information and belief, the Ring -1 Enterprise's pattern of racketeering activity, conducted through other websites owned or controlled by Defendants, is more than three years old.

268.    Indeed, the Ring -1 Enterprise has developed and deployed cheats for the following other games, to name a few: *Rainbow 6 Siege* by Ubisoft, *Apex Legends* by Respawn Studios, *Dead by Daylight* by Behavior Interactive, *PlayerUnknown's Battlegrounds* by Krafton and Microsoft Studios, *Escape from Tarkov* by Battlestate Games, *Valorant* by Riot Games, *DayZ* by Bohemia Interactive, *Hell Let Loose* by Black Matter, *Call of Duty: Black Ops Cold War* by Treyarch and Raven Software Corporation, *Call of Duty Vanguard* by Sledgehammer Games, *Call of Duty: Modern Warfare II* by Infinity Ward, *Rainbow Six Siege* by Ubisoft, and *Overwatch 2* by Blizzard Entertainment (collectively, the "Other Games").

269.    Upon information and belief, the Ring -1 Enterprise's conduct with respect to the Other Games is similar to its conduct with respect to the *Destiny 2* cheat, and violates similar civil and criminal statutes.

**Predicate Acts:**

I.    Wire Fraud (18 U.S.C. § 1343)

270.    The Ring -1 Enterprise's cheat software is an integral part of a scheme to obtain property from Bungie by means of false or fraudulent pretenses.

271.    Users who wish to download the *Destiny 2* client software can only do so after indicating their agreement to the LSLA.

272.    Each and every time Defendants downloaded the *Destiny 2* client software, they

COMPLAINT - 28

1   represented to Bungie their intent to comply with the LSLA.

2       273.   Bungie relied on that representation in providing Defendants with the *Destiny 2*

3   client software.

4       274.   Each and every time Defendants represented their intent to comply with the

5   LSLA, it was knowingly and intentionally false, in that Defendants had a then-present intent to

6   breach the terms of the LSLA by developing and using the Ring -1 Cheat software.

7       275.   Moreover, each and every Ring -1 Cheat user who downloads the *Destiny 2*

8   software while intending to use the Ring -1 Cheat makes the same representation, which is

9   fraudulent for the same reasons, and which is relied upon by Bungie in providing the user with

10  the *Destiny 2* software.

11      276.   That is true not only for the initial download, but for the download of any update,

12  expansion, season, or other DLC provided by Bungie.

13      277.   Defendants' use of the interstate wires in connection with this scheme is

14  pervasive: in the initial download of *Destiny 2*, in, upon information and belief, email and

15  telephonic communications during the development of their cheat software, in their web-based

16  marketing, sales, and support for the cheat software, in the users' download of the cheat

17  software, and in each individual use of the cheat software during a *Destiny 2* gaming session.

18      278.   Upon information and belief, Defendants' use of PayDash is to obfuscate the

19  nature of consumer purchases.

20      279.   Upon information and belief, customers must agree that they are not purchasing a

21  product from Ring -1, but from PayDash.

22      280.   This obfuscation layer allows Defendants access to traditional payment processors

23  under false and fraudulent pretenses.

24      281.   Defendants conduct is intentional.

25      282.   Indeed, Stripe, a popular payment processor, has multiple clauses in its Prohibited

26  and Restricted Businesses policy that apply to Ring -1.

COMPLAINT - 29

283.    One such clause reads "Any other products or services that directly infringe or facilitate infringement upon the trademark, patent, copyright, trade secrets, proprietary or privacy rights of any third party".

284.    Paypal, a popular payment processor, likewise has multiple clauses in its Acceptable Use Policy that apply to Ring -1.

285.    One such clause reads "You may not use the PayPal service for activities that: relate to transactions involving… items that infringe or violate any copyright, trademark, right of publicity or privacy or any other proprietary right under the laws of any jurisdiction".

286.    Coinbase, a popular cryptocurrency processor, likewise prohibits users from engaging transactions that "infringe or violate any copyright, trademark, right of publicity or privacy…".

287.    Indeed, the software and services offered by Defendants is in violation of traditional payment processors' terms and conditions.

## II.  Criminal Copyright Infringement

288.    As alleged above, Defendants' conduct constitutes criminal copyright infringement under 17 U.S.C. § 506.

289.    Defendants infringed on Bungie's copyrights for their commercial advantage.

290.    Defendants' infringement was willful, knowing, and intentional.

291.    Defendants infringed on Bungie's copyrights for their private financial gain.

292.    Defendants have committed multiple acts of criminal copyright infringement, over a significant period of time, with each instance of fraudulently downloading, developing a "hack" for, and selling its cheat software for *Destiny 2* and each of the Other Games being a separate instance of criminal copyright infringement.

COMPLAINT - 30

III. <u>Money Laundering (18 U.S.C. § 1956 & 1957)</u>

293.    In selling licenses to its cheat software, Defendants derived proceeds from specified unlawful activity – the wire fraud and criminal copyright infringement alleged above.

294.    Upon information and belief, Defendants have utilized such proceeds to promote the development and sales of their cheat software, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

295.    Upon information and belief, Defendants have engaged in monetary transactions involving such proceeds in amounts greater than $10,000, in violation of 18 U.S.C. § 1957.

296.    As alleged above, Bungie has been significantly damaged by Defendants' pattern of racketeering activity.

297.    Bungie has suffered reputational damage as a result of Defendants' cheat software and scheme to defraud.

298.    Bungie has incurred significant expense as a result of Defendants' cheat software and scheme to defraud.

299.    Bungie has lost significant revenue as a result of Defendants' cheat software and scheme to defraud.

300.    As such, Bungie is entitled to an award of its damages, in an amount to be proven at trial, treble damages and attorneys' fees as allowed under the RICO statute.

301.    In addition, Bungie is entitled to injunctive relief as authorized under 18 U.S.C. § 1964(a), directing Defendants to cease marketing, selling, or supporting their *Destiny 2* cheat software.

**THIRD CAUSE OF ACTION**
**(Circumvention of Technological Measures, 17 U.S.C. § 1201(a) & (b))**

302.    Bungie repeats and realleges the allegations of Paragraphs 1-301 of this Complaint as though fully set forth herein.

303.    Bungie is the owner and holder of all intellectual property rights and interests in its games, including copyrights.

COMPLAINT - 31

304.    Bungie protects its games with a "defense in depth" consisting of layers of technological protection measures.

305.    These measures include checks such as passwords and related measures to ensure that only authorized users access the games, but also a broad array of other technological measures that the cheaters must breach after they log in and before their cheat can work.

306.    Bungie developed extensive anti-cheating technological measures that it put in place precisely to curb the type of software Defendants develop, market, and use.

307.    Bungie's mitigation efforts are extensive and ongoing, incorporating efforts such as monitoring player movements for unusually rapid or responsive behavior and validating client-generated values to ensure that they are within expected ranges.

308.    Bungie also controls what data is and is not visible to *Destiny 2* users. While *Destiny 2*'s servers are aware at all times of the positions of every player and computer-generated enemy or obstacle, the *Destiny 2* client software does not provide all of this information to the player.

309.    Instead, the *Destiny 2* client software renders this data in an intentionally imprecise fashion which has substantial implications for player strategy and behavior.

310.    Moreover, consistent with its intention of limiting access to *Destiny 2* to those players who comply with the LSLA, Bungie bans accounts of players it catches cheating, denying them further access to *Destiny 2*.

311.    Defendants manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes functionality, the sole purpose of which is to breach Bungie's technological protection measures, access its functions without authorization, and impair the integrity of the *Destiny 2* software and system.

312.    Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes functionality solely to alter the artificial movements

COMPLAINT - 32

exhibited by player within the game when they are using Defendants' software, allowing these players' cheating to remain undetected by Plaintiff's anti-cheat mitigation technology.

313.    Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes the functionality solely to alter the Hardware IDs of a person's computer and remove anti-cheat tracing information, allowing banned players to create new *Destiny 2* accounts and remain undetected by Plaintiff's anti-cheat mitigation technology.

314.    Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software that alters the *Destiny 2* client on honest players' computers.

315.    Defendants' software generates environmental anomalies via the speed hack, fly hack, and instant revival cheats.

316.    The fraudulent data packets generated by these cheats are instantaneously sent to the *Destiny 2* servers purporting to be legitimate data.

317.    The *Destiny 2* servers then route those data packets to the clients of other *Destiny 2* players.

318.    The *Destiny 2* clients of non-cheating players then render the environmental anomalies.

319.    The result is that even players who are not using cheat software are able to visibly see the cheat in action.

320.    Circumventing Plaintiff's anti-cheat mitigation technology, which functions to control and limit access to *Destiny 2* either directly or by identifying to Bungie which accounts it must ban, is a primary function of Defendants' product.

321.    These features of Defendants' product have no commercially significant purpose beyond circumventing Plaintiff's anti-cheat mitigation technology.

322.    If Defendants' cheat software were to cease being effective in circumventing Plaintiff's anti-cheat mitigation technology, there would in turn cease to be a market for Defendants' cheat software.

COMPLAINT - 33

323. Defendants explicitly market their products as designed to circumvent Plaintiff's anti-cheat mitigation technology, which functions to control and limit access to their work.

324. As alleged above, use of cheat software is a breach of the LSLA rendering any subsequent use of the *Destiny 2* game unlicensed and infringing.

325. Defendants thus manufacture, import, offer to the public, provide, and otherwise traffic in a technology, product, service, and device primarily designed to circumvent protection afforded by technological measures that effectively protects Bungie's rights in *Destiny 2*.

326. Defendants' conduct has caused, and will continue to cause, irreparable harm to Bungie.

327. As such, Bungie is entitled to injunctive relief, an order directing the destruction of Defendants' *Destiny 2* cheat software, an award of statutory damages in the maximum amount of $2,500 per instance of Defendants' *Destiny 2* cheat software that Defendants sold or licensed, Defendants' profits attributable to their violations of 17 U.S.C. § 1201 pursuant to 17 U.S.C. § 1203(c), and Bungie's costs and attorneys' fees pursuant to 17 U.S.C. § 1203(b).

## FOURTH CAUSE OF ACTION
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B))

328. Bungie repeats and realleges the allegations of Paragraph 1-327 of this Complaint as if fully set forth herein.

329. The *Destiny 2* servers host the *Destiny 2* Server Software, which creates the virtual world of *Destiny 2*.

330. The *Destiny 2* servers and software oversee the interaction of the player characters, non-player characters, and environmental elements of the game.

331. Players must access *Destiny 2*'s servers to connect to and play the game.

332. In order to access *Destiny 2*'s servers, players must install the *Destiny 2* client software provided by Plaintiff.

333. In order to access *Destiny 2's* servers, players must use an unmodified *Destiny 2*

COMPLAINT - 34

client.

334.   The *Destiny 2* client software has no functionality other than to allow players to connect to the *Destiny 2* server software, enter the virtual world of *Destiny 2*, and play the game.

335.   As part of this functionality, the *Destiny 2* client software collects and maintains data and information within its memory space about the position, characteristics, and actions of the player character, and communicates this information to the *Destiny 2* server software in an active and interactive fashion.

336.   Installation of the *Destiny 2* client software requires players to read and accept the LSLA.

337.   The LSLA expressly provides that "All title, ownership rights, and intellectual property rights in and to the Program and any copies thereof are owned by Bungie."

338.   The LSLA further expressly provides that "Your license confers no title or ownership in this Program, and should not be construed as a sale of any rights in this Program."

339.   The *Destiny 2* client software is directly related to and operates in conjunction with the *Destiny 2* servers and server software, both by virtue of their symbiotic function and under the terms of the LSLA

340.   The system consisting of the *Destiny 2* servers, the *Destiny 2* server software, the *Destiny 2* client software, and the data communications between them operates both interstate and internationally at all times and thereby operates in a manner affecting interstate and international commerce.

341.   The *Destiny 2* system, including the *Destiny 2* client software and the memory space it occupies, is therefore a protected computer.

342.   The *Destiny 2* clients on other player's computers are also protected computers.

343.   The LSLA protects the integrity of the *Destiny 2* system by prohibiting users from hacking or modifying the *Destiny 2* client software.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

344.    Defendants, acting in concert with users who deploy their cheat software, obtain data from within the *Destiny 2* client software's memory space that the users are not authorized to access – specifically the positional information used in Defendants' "Character ESP" and "Radar" displays.

345.    Defendants, acting in concert with users who deploy their cheat software, generate false data and environmental anomalies and route it to the *Destiny 2* servers.

346.    The false data and environmental anomalies are then routed to the *Destiny 2* clients on other players' computers.

347.    Indeed, Defendants intentionally alter the *Destiny* 2 clients of other players with fraudulent data.

348.    In addition, Defendants are fully aware that users who deploy their cheat software do so in violation of the LSLA, and that access to the *Destiny 2* client software memory space by such users is entirely unauthorized.

349.    In accessing the *Destiny 2* client software's memory space without authorization, Defendants' software obtains information from the *Destiny 2* system to enable the presentation of the "Character ESP" or "Radar" displays on the users' computers.

350.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of the aiming function of the *Destiny 2* client software, enabling the player to fire with perfect accuracy every time.

351.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of and removes intentional limiting effects of *Destiny 2*'s gameplay such as weapon recoil, ammo count, and rate of fire.

352.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of and moves characters in a way that *Destiny 2* does not permit, such as increased movement speed and flying.

353.    In addition, by accessing the *Destiny 2* client software's memory space without

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1    authorization, the cheat software causes other players in the vicinity of the cheat user to have

2    their visual data altered to render characters moving in a way that *Destiny 2* does not permit or to

3    experience upsetting gameplay outcomes that should be impossible in normal operation of the

4    game.

5            354.    In addition, by accessing the *Destiny 2* client software's memory space without

6    authorization, Defendants' software allows players to instantly revive with no delay.

7            355.    In addition, by accessing the *Destiny 2* client software's memory space without

8    authorization, the cheat software causes, other players in the vicinity of the cheat user to have

9    their gameplay altered by a friendly or enemy player being revived with no delay.

10           356.    As a result of this conduct, Defendants' software endows cheating users with

11   significant advantages not available to players who play the game honestly.

12           357.    Plaintiff has implemented security measures specifically to prevent players from

13   accessing the protected memory spaces of the *Destiny 2* client or to send unauthorized game state

14   information to the server necessary to make these illicit changes.

15           358.    Defendants' software bypasses and evades these security measures.

16           359.    These advantages enable cheating players to achieve results within the game,

17   including within the game's highly popular and competitive PvP mode, which do not reflect their

18   actual ability, skill, or investment of time and effort into the *Destiny 2* game.

19           360.    When the values stored within the *Destiny 2* client software's memory space

20   which represent these fraudulent achievements are communicated to the *Destiny 2* servers, server

21   software, and the *Destiny 2* clients of other players, these values become a trusted and accepted

22   part of the game.

23           361.    The *Destiny 2* system takes actions based on these trusted but fraudulent values in

24   ways that affect the cheating player and other players.

25

26

COMPLAINT - 37

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

362.    This impairment to the integrity of the *Destiny 2* system and software is a direct result of the Defendants' unauthorized access to the *Destiny 2* system via the *Destiny 2* client software memory space.

363.    The fraudulent weapon functionality, movement, and instant revival data additionally impairs the integrity of *Destiny 2* data sent to unmodified *Destiny 2* clients in use by other players.

364.    Bungie has suffered a loss greater than the $5,000 statutory minimum in the costs of responding to Defendants' hacking.

365.    As such, Bungie is entitled to injunctive relief and an award of its compensatory damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

366.    Bungie repeats and realleges the allegations of Paragraphs 1-365 of this Complaint as though fully set forth herein.

367.    The LSLA is a valid, binding contract between Bungie and each individual player of *Destiny 2*.

368.    *Destiny 2* cannot be played unless the user agrees to Bungie's LSLA.

369.    The LSLA is displayed in full for the user in the game client prior to the user's first play on a new account and after each major update, and must be accepted by the user in order to play.

370.    The LSLA is also made easily and readily available on Bungie's website.

371.    Defendants could not have developed their cheat software without playing *Destiny 2*.

372.    Upon information and belief, Defendants, or their agents acting on their behalf, agreed to the LSLA.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

373.    The LSLA prohibits users from commercially exploiting the *Destiny 2* system or any of its parts.

374.    The LSLA prohibits users from "copy[ing], reproduce[ing], distribut[ing], display[ing] or us[ing] any part of [*Destiny 2*] except as expressly authorized by Bungie."

375.    The LSLA prohibits users from copying *Destiny 2* onto any hard drive or other storage device other than as occurs during the initial download.

376.    The LSLA prohibits users from "reverse engineer[ing], deriv[ing] source code, modify[ing], decompile[ing], disassembl[ing], or create[ing] derivative works of [*Destiny 2*], in whole or in part."

377.    The LSLA prohibits users from "hack[ing] or modify[ing *Destiny 2*], or create[ing], develop[ing], modify[ing], distribut[ing], or us[ing] any unauthorized software programs to gain advantage in any online or multiplayer game modes."

378.    The LSLA explicitly warns users that "Any use of the Program in violation of the License Limitations will result in an immediate termination of your license, and continued use of the Program will be an infringement of Bungie's copyrights in and to the program."

379.    Upon information and belief, in developing, marketing, and selling their cheat software, Defendants have breached each and every one of those provisions.

380.    Defendants' sale of *Destiny 2* cheat software is a commercial exploitation of the *Destiny 2* system and parts of its software.

381.    Upon information and belief, as alleged above, Defendants' cheat software operates via memory injection, using a part of the *Destiny 2* software in a manner not authorized by Bungie.

382.    Upon information and belief, developing the cheat software required Defendants to copy the *Destiny 2* program onto additional hard drives or storage devices.

COMPLAINT - 39

383.     Upon information and belief, developing the cheat software required Defendants to reverse engineer, derive source code, modify, decompile, and/or disassemble the *Destiny 2* program.

384.     As alleged above, Defendants' cheat software is a derivative work of the Destiny 2 program.

385.     And, of course, Defendants' cheat software is an unauthorized program players use to gain advantage in *Destiny 2*'s online and multiplayer player game modes.

386.     Defendants have thus repeatedly breached the LSLA.

387.     Bungie has incurred and will continue to incur enormous expense as a result of Defendants' breaches of the LSLA.

388.     Bungie has lost considerable revenue as a result of Defendants' breaches of the LSLA.

389.     As a result of the foregoing, Bungie is entitled to an award of damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**(Intentional Interference with Contractual Relations)**

390.     Bungie repeats and realleges the allegations of Paragraphs 1-389 of this Complaint as though fully set forth herein.

391.     Defendants were generally and specifically aware that any *Destiny 2* user to whom they sold their *Destiny 2* cheat software was bound by the LSLA.

392.     Defendants were aware that any player who used their *Destiny 2* cheat software would thereby breach the LSLA's prohibition on hacking or modifying *Destiny 2* to gain an advantage in its online and multiplayer modes.

393.     Indeed, *Destiny 2* only provides online and multiplayer modes, and Defendants specifically marketed their cheat software as providing an advantage in such modes.

COMPLAINT - 40

394.    Moreover, Defendants were aware that their cheat software created a derivative work of *Destiny 2* each time its ESP feature was used, and therefore that their users' deployment of ESP would breach the LSLA.

395.    Defendants induced every player to which they sold a cheat subscription to breach the LSLA each time such player used the cheat software.

396.    Defendants induced and caused such breaches by allowing *Destiny 2* players access to their cheat software and providing support for such cheat software.

397.    Additionally, Defendants induced and caused such breaches for *Destiny 2* players who were not customers of their Ring -1 Cheat.

398.    Indeed, Bungie's LSLA contains a provision that "[a]ny ban or restriction for a player determined to be cheating or violating our Terms of Use may be applied to the entire fireteam of that player."

399.    Because Defendants' creation and distribution of the cheat software was in violation of their own obligations to Bungie under the LSLA, they induced and/or caused the breaches by other *Destiny 2* users through improper means.

400.    As a direct and proximate result of Defendants' actions, Bungie suffered damage in an amount to be proven at trial, including but not limited to a loss of goodwill among users of Plaintiff's game, diversion of Plaintiff's resources to attempt to detect and prevent the use of the Cheating Software, and decreased profits.

## SEVENTH CAUSE OF ACTION
### (Civil Conspiracy)

401.    Bungie repeats and realleges the allegations of Paragraph 1-400 of this Complaint as if fully set forth herein.

402.    The Ring -1 Enterprise is comprised of individual and corporate cheat retailers, developers, promoters, resellers, moderators, and additional support staff.

COMPLAINT - 41

403.   Defendants agreed to act together in connection with the unlawful and tortious conduct described above.

404.   Upon information and belief, Defendants are aware of the wrongfulness of their conduct.

405.   This conspiracy directly harmed Bungie, through lost business, an injured reputation, and the significant expense of its anti-cheating measures.

406.   As a result of the foregoing, Bungie is entitled to an award of damages in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bungie, Inc., prays for the following relief:

A.   That judgment be entered in Plaintiff's favor against Defendants on all applicable claims;

B.   That Defendants and their officers, agents, representatives, servants, employees, heirs, successors, assigns, and all other requisite participants in Defendants' enterprise be preliminarily and permanently enjoined from:

(1) Infringing, inducing, or enabling others to infringe Bungie's copyrights;

(2) Creating, writing, developing, advertising, promoting, and/or offering for sale or otherwise any software that infringes Bungie's copyrights;

(3) Descrambling, decrypting, avoiding, bypassing, removing, deactivating, or impairing a technological measure that controls access to Bungie's copyrighted works;

COMPLAINT - 42

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

(4) Manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing Bungie's technological measure(s) that effectively controls access to a work; That has only limited commercially significant purpose or use other than to circumvent a technological protection measure that effectively controls access to a work; and/or that is marketed by Defendants for use in circumventing technological protection measure(s) that effectively control access to a work;

(5) Manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing protection afforded by technological measure(s) that effectively protects a right of Bungie in a work or a portion thereof; that has only limited commercially significant purpose or use other than to circumvent protection afforded by technological protection measure(s) that effective protect a right of Bungie in a work or a portion thereof; and/or that is marketed by Defendants for use in circumventing protection afforded by technological protection measure(s) that effective protect a right of Bungie in a work or a portion thereof; and

(6) Aiding or assisting another person or entity in any of the activities described in (1) - (5);

C.      An order requiring that Defendants immediately destroy all copies of *Destiny 2* or any derivative work thereof in their possession or control;

D.      An order requiring that Defendants immediately destroy all copies of any cheats for *Destiny 2*;

E.      An order requiring Defendants to immediately and permanently disable all extant cheating software;

F.      An order forbidding Defendants from developing, manufacturing, and/or selling any cheats for any ensuing releases of Bungie titles;

G.      An award to Bungie of restitution and damages, including, but not limited to, compensatory, statutory (including enhanced statutory damages for willful

COMPLAINT - 43

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

infringement, violation of Washington's Uniform Trade Secrets Act, and for RICO), punitive damages, and all other damages permitted by law;

H.    That Bungie be awarded pre-judgement and post-judgment interest on all damages awarded against Defendants;

I.    An award to Plaintiff of its costs incurred in this suit as well as reasonable attorneys' fees; and

J.    For such other relief as the Court deems just and proper.

DATED this 1st day of August 2023.

Respectfully Submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

*s/ Christopher Varas*
Christopher Varas WSBA #32875
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Telephone: 206.516.3088
Facsimile: 206.623.6793
cvaras@kilpatricktownsend.com

*Attorneys for Plaintiff Bungie, Inc.*

COMPLAINT - 44