# EXHIBIT A

HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC., a Delaware corporation,

      Plaintiff,

v.

JOSHUA FISHER, JACOB W. MAHURON
A/K/A "PRAGMATICTAX," MATTHEW
ABBOTT A/K/A "NOVA," JOSE DEJESUS
AKA "DAVID HASTINGS" A/K/A
"J3STER," TRAVERS RUTTEN A/K/A
"TRAVERS7134," JESSE WATSON A/K/A
"JESSEWATSON3944," JOHN DOE NO. 1
A/K/A "CALC", ANDREW THORPE
A/K/A "CYPHER," RYAN POWER AKA
"KHALEESI," JOHN DOE NO. 4 A/K/A
"GOD," JOHN DOE NO. 5 A/K/A
"C52YOU," JOHN DOE NO. 6 A/K/A
"LELABOWERS74," JOHN DOE NO. 7
A/K/A "FRAMEWORK," KICHING KANG
A/K/A "SEQUEL," JOHN DOE NO. 9
A/K/A "1NVITUS," DAVID BRINLEE
A/K/A "SINISTER," JOHN DOE NO. 11
A/K/A "THEGUY," JOHN DOE NO. 12
A/K/A "BEATRED," JOHN DOE NO. 13
A/K/A "COMMUNITYMODS," JOHN
DOE NO. 14 A/K/A "PALACE," JOHN
DOE NO. 15 A/K/A "VINCENTPRICE,"
JOHN DOE NO. 16 A/K/A "ESSWAN,"
JOHN DOE NO. 17A/K/A "ADMIRAL,"
JOHN DOE NO. 18 A/K/A
"TOMDICKHARRY," JOHN DOE NO. 19
A/K/A "ROB," JOHN DOE NO. 20 A/K/A
"STAYLOCKED," JOHN DOE NO. 21
A/K/A "FIVE-STAR," JOHN DOE NO. 22
A/K/A "HORROR," JOHN DOE NO. 23
A/K/A ELITECHEATZ.CO, JOHN DOE
NO. 24 A/K/A MIHAI LUCIAN, JOHN

Case No. 2:23-cv-01143-MLP

AMENDED COMPLAINT FOR
(1) COPYRIGHT INFRINGEMENT,
(2) CIVIL RICO VIOLATIONS, (3) DMCA
VIOLATIONS, (4) CFAA VIOLATIONS,
(5) BREACH OF CONTRACT,
(6) INTENTIONAL INTERFERENCE
WITH CONTRACTUAL RELATIONS,
AND (7) CIVIL CONSPIRACY

JURY DEMAND

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  DOE NO. 25 A/K/A NATHAN BERNARD,
   A/K/A "DOVE," JOHN DOE NO. 26 A/K/A
2  "BLACKMAMBA," JOHN DOE NO. 27
   A/K/A "BILLNYE," JOHN DOE NO. 28
3  A/K/A "BANEK192," JOHN DOE NO. 29
   A/K/A SHOPPY ECOMMERCE LTD,
4  JOHN DOE NO. 30 A/K/A/ FINN GRIMPE
   A/K/A "FINNDEV," AND JOHN DOES
5  NO. 31-50,

6              Defendants.

7        Plaintiff Bungie, Inc. ("Bungie"), as and for its complaint against Defendants Joshua

8  Fisher, Jacob W. Mahuron a/k/a "PragmaticTax," Matthew Abbott a/k/a "Nova," Jose DeJesus

9  a/k/a "David Hastings" a/k/a "J3ster," Travers Rutten a/k/a "travers7134," Jesse Watson a/k/a

10 "jessewatson3944," John Doe No. 1 a/k/a "calc", Andrew Thorpe a/k/a "Cypher," Ryan Power

11 a/k/a "Khaleesi," John Doe No. 4 a/k/a "god," John Doe No. 5 a/k/a "c52you," John Doe No. 6

12 a/k/a "lelabowers74," John Doe No. 7 a/k/a "Framework," Kichang Kang a/k/a "Sequel," John

13 Doe No. 9 a/k/a "1nvitus," David Brinlee a/k/a "Sinister," John Doe No. 11 a/k/a "TheGuy,"John

14 Doe No. 12 a/k/a "Beatred", John Doe No. 13 a/k/a "CommunityMods" a/k/a "CM", John Doe

15 No. 14 a/k/a "Palace", John Doe No. 15 a/k/a "VincentPrice", John Doe No. 16 a/k/a "Esswan",

16 John Doe No. 17 a/k/a "Admiral", John Doe No. 18 a/k/a, "TomDickHarry" John Doe No. 19

17 a/k/a "Rob", John Doe No. 20 a/k/a "Staylocked", John Doe No. 21 a/k/a "Five-star", John Doe

18 No. 22 a/k/a "Horror", John Doe No. 23 a/k/a Elitecheatz(dot)co, John Doe No. 24 a/k/a Mihal

19 Lucian, John Doe No. 25 a/k/a Nathan Bernard, John Doe No. 26 a/k/a "BlackMamba", John

20 Doe No. 27 a/k/a "BillNye", John Doe No. 28 a/k/a Banek192, John Doe No. 29 a/k/a

21 Shoppy(dot)gg, John Doe No. 30 a/k/a Finn Grimpe a/k/a "Finndev", and John Does No. 31-50,

22 respectfully alleges as follows:

23                           **INTRODUCTION**

24       1.      Defendants (collectively, the "Ring -1 Enterprise") are the developers, marketers,

25 customer support staff, and sellers of the Ring -1 cheat software (the "Ring -1 Cheat"), who work

26 together to enable an assault on Bungie via the Ring -1 Cheat.

27       2.      Ring -1 is an extensive and sophisticated enterprise which goes to extraordinary

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

lengths to conceal its scope, its reach, and the extent of its wrongful conduct.

3.      The members of the enterprise are careful to conceal their identities as much as possible in an effort to escape accountability for the harm their activities cause to the players, developers, and producers of games like *Destiny 2.*

4.      These efforts have included changing pseudonyms, falsely claiming that people have left the enterprise, and even falsely claiming that people involved in the enterprise have died.

5.      Bungie has not been deterred and has found them anyway.

6.      Bungie previously identified more than a dozen members of the Ring -1 Enterprise, either by their legal names or by their internet pseudonyms. But it turned out these individuals and entities were just the tip of the iceberg. Not only has Bungie's investigation unmasked six of the previously pseudonymous defendants, but it has also identified twenty additional individual and corporate members of the scheme.

7.      For the cheating community as a whole – but especially for these newly named and/or identified members of the enterprise – the days of *Destiny 2* cheaters being free to engage in a wholesale assault on the *Destiny 2* game and its community without fear of consequences are over.

8.      Over the past several years, Bungie has filed a series of successful lawsuits targeting not individual cheaters, but the corporate entities and individuals who profit from making, selling, supporting, and otherwise proliferating malicious cheat software that attacks *Destiny 2*, its flagship game.

9.      As explained in those lawsuits, and further detailed below, the proliferation of cheating is a direct threat to the success – social, commercial, and artistic – of *Destiny 2*.

10.     The judgments Bungie obtained in those lawsuits have repeatedly confirmed that the sale and use of cheat software violates a raft of federal and state laws, breaches users' contracts with Bungie (the Limited Software License Agreement, or "LSLA," that governs access to *Destiny 2*), and is a basis for significant tort liability.

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 3

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

11.     Cheat manufacture and sale has already been repeatedly found to violate copyright law, the DMCA's anticircumvention provisions, the LSLA, and – when the individuals and entities involved are sufficiently organized to satisfy the enterprise requirements, as these Defendants are – even RICO.

12.     Bungie's litigation, and litigation victories, have not gone unnoticed; they have been widely covered in the gaming industry press and beyond.

13.     Defendants, in other words, have been more than placed on notice that their conduct is tortious, wrongful, and in fact illegal, and have had every opportunity to voluntarily cease it.

14.     And it is clear, from their words and actions since this lawsuit was filed, that they are aware of this lawsuit.

15.     But they have not halted their actions.

16.     Instead, the Ring -1 Enterprise has deliberately and willfully continued to engage in that conduct, secure in the belief that they can avoid consequences for it.

17.     And the Ring -1 Cheat is particularly dangerous, predicated on an insidious misuse of the hypervisor layer of users' operating systems that puts their computers and others' at risk.

18.     Bungie thus brings this action against the Ring -1 Enterprise, to enforce its contractual and intellectual property rights, maintain the integrity of its product, recover for its losses, and defend its player base by preventing Defendants from continuing to engage in the conduct that threatens its product and players.

## PARTIES

### I.     Plaintiff

19.     Plaintiff Bungie, Inc. is a Delaware corporation with its primary place of business at 550 106th Avenue NE, Suite 108, Bellevue, Washington 98004.

### II.     Defendants

20.     Although Bungie was aware when it filed the original Complaint that the Ring -1

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Enterprise was vast, it had only identified fifteen members (the "Original Defendants") with sufficient specificity to name them in the complaint at the time of filing. Of those fifteen Original Defendants, Bungie had fully identified four by their full legal names and, in some cases, addresses. Due to Defendants' intentional concealment of their identities, Bungie identified the remaining defendants as Doe defendants, distinguishing them solely by their pseudonymous Internet screen names (the "Pseudonymous Defendants").

21.     Bungie therefore sought – and was granted – extensive *ex parte* third-party discovery on the identity of the Pseudonymous Defendants.

22.     That discovery, in concert with Bungie's persistent (and ongoing) investigation, has enabled Bungie to fully unmask five of the eleven Pseudonymous Defendants, as well as to make significant progress towards the same goal for the remaining six Pseudonymous Defendants.

23.     Bungie's investigation has also resulted in the identification of twenty additional Pseudonymous Defendants, as listed below.

A.      **Defendants Known at the Time of Filing**

24.     Defendant Joshua Fisher is a United Kingdom national, residing at 115 Rough Road Birmingham B44 0UR.

25.     Upon information and belief, Fisher is the sole proprietor of Paydash.

26.     Upon information and belief, Paydash acted as middleman reseller and payment processing service for Ring -1.

27.     Upon information and belief, presumably to obfuscate Fisher's involvement in the transaction, Paydash's terms of use require customers to certify that they are buying the Ring -1 cheat from Paydash.

28.     Defendant Jacob W. Mahuron a/k/a "PragmaticTax" is a support staffer residing in Delaware, who uses the username "PragmaticTax" on the Ring -1 forums.

29.     Upon information and belief, Mahuron used the account PragmaticTax#9698 with the ID of 362515273439248384 in the Ring -1 Discord.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

30.     Defendant Matthew Abbott a/k/a "Nova" is a support staffer residing in West Virginia who uses the username "Nova" on the Ring -1 forums.

31.     Upon information and belief, Abbott used the account Nova®#8447 with the ID of 432961753920438284 in the Ring -1 Discord.

32.     Defendant "David Hastings" has been unmasked as detailed below.

33.     Defendant Travers Rutten a/k/a "Travers7134" is a Ring -1 reseller residing in Brisbane, Queensland, Australia.

34.     As detailed below, Rutten historically resold Ring -1 through the website store.whysp.org.

35.     Upon information and belief, Rutten provides support for the Ring -1 Cheat through the whysp Discord server.

36.     Defendant Jesse Watson a/k/a "jessewatson3944", is a Ring -1 reseller who, on information and belief, resides in or near Vancouver, Washington.

37.     As detailed below Watson sells the Ring -1 Cheat through the Softaim Express Discord server.

38.     Defendant John Doe No. 1 a/k/a "calc", is an administrator, whose true identity is currently unknown, that uses the username "calc" on the Ring -1 forums.

39.     Upon information and belief, calc is one of the individuals developing cheats for Ring-1.

40.     Defendant John Doe No. 2 a/k/a "Cypher" has been unmasked as detailed below.

41.     Defendant John Doe No. 3 a/k/a "Khaleesi" has been unmasked as detailed below.

42.     Defendant John Doe No. 4 a/k/a "god" is a support staffer, whose true identity is currently unknown, that uses the username "god" on the Ring -1 forums.

43.     Upon information and belief, god used the account Foreign#0666 with the ID of 826829028043390997 in the Ring -1 Discord.

44.     Defendant John Doe No. 5 a/k/a "c52you" is a Ring -1 cheat developer, whose true identity is currently unknown, that uses the username "c52you". On information and belief,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  Defendant c52you resides in Europe.

2  45.  Defendant John Doe No. 6 a/k/a "lelabowers74" is a Ring -1 cheat developer,

3  whose true identity is currently unknown, that uses the username "lelabowers74". On

4  information and belief, Defendant lelabowers74 is a resident of Poland.

5  46.  Defendant John Doe No. 7 a/k/a "Framework" is an administrator on the Ring -1

6  site, whose true identity is currently unknown, that uses the username "Framework" on the

7  Ring-1 forums.

8  47.  Defendant John Doe No. 8 a/k/a "Sequel" has been unmasked as detailed below.

9  48.  Defendant John Doe No. 9 a/k/a "1nvitus" is a reseller of the Ring -1 Cheat,

10  whose true identity is currently unknown, that uses the username "1nvitus" on the Ring -1

11  forums.

12  49.  Upon information and belief, 1nvitus runs reseller websites hosted at:

13  invitus.selly.store and 1nvituscheats.com.

14  50.  Defendant John Doe No. 10 a/k/a "Sinister" has been unmasked as detailed

15  below.

16  **B.  Newly Unmasked Defendants**

17  51.  Defendant Jose M. DeJesus a/k/a "David Hastings" a/k/a "J3ster" is a support

18  staffer residing at 201 Harbor Dr. Apt. 1, Claymont, DE 19703, who uses the username "J3ster"

19  on the Ring -1 forums.

20  52.  Upon information and belief, Defendant DeJesus used the account ♂ Jester

21  ♂#0530 with the ID of 468595190190571523 in the Ring -1 Discord.

22  53.  Defendant Andrew Thorpe a/ka John Doe No. 2 a/k/a "Cypher" is a site operator

23  and staff member residing at Flat 2, 4 Clarence Road, Bridlington, YO15, England, that uses the

24  username "Cypher" on the Ring -1 forums.

25  54.  Upon information and belief, Thorpe used the account Cypher#0344 with the ID

26  of 811954504606023710 in the Ring -1 Discord.

27  55.  Upon information and belief, Thorpe also used the account Cypher#4753 with the

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 7

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

ID of 853198311186759681 in the Ring -1 Discord.

56.     Defendant Ryan Power a/k/a John Doe No. 3 a/k/a "Khaleesi" is a support staffer, residing at 7 Quantock Close, Warminster Wiltshire BA12 8RQ, who uses the username "Khaleesi" on the Ring -1 forums.

57.     Upon information and belief, Defendant Power used the account Khaleesi#3153 or Tokio#3153 with the ID of 652686479847456789 in the Ring -1 Discord.

58.     Defendant Kichang Kang a/k/a John Doe No. 8 a/k/a "Sequel" is a reseller of the Ring -1 Cheat residing at 468 Summeridge Dr., Thornhill, ON L4J 9H9, who uses the username "Sequel" on the Ring -1 forums.

59.     Upon information and belief, Defendant Kang runs reseller websites hosted at: Rev1ve.co and ring-1sequel.selly.store.

60.     Defendant David Brinlee, a/k/a John Doe No. 10 a/k/a "Sinister," is a reseller of the Ring -1 Cheat, who resides at 102 Lassen Ln, Milford, PA 18337.

61.     As detailed below, Brinlee operates and sells the Ring -1 Cheat through a private Discord server.

### C.     Newly Identified Reseller Defendants

62.     In addition to the Defendants detailed above, the following additional Defendants have been identified.

63.     Defendant John Doe No. 11 a/k/a "TheGuy" is a reseller of the Ring -1 Cheat who, on information and belief, resides in France.

64.     On information and belief, TheGuy sells the Ring -1 Cheat through a fully-hosted e-commerce website at https://theguy-ring1.mysellix.io/.

65.     Defendant John Doe No. 12 a/k/a "BeatRed" is a reseller of the Ring -1 Cheat who uses the Discord ID 902557900407468103.

66.     On information and belief, BeatRed sells the Ring -1 Cheat through a Discord server of the same name, identified via the Discord Server ID 1014360248036896921.

67.     Defendant John Doe No. 13 a/k/a "CommunityMods" a/k/a "CM" is a Discord

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

reseller of the Ring -1 Cheat who uses the Discord ID 273561101851951104.

68.     On information and belief, CommunityMods has historically sold the Ring -1 Cheat in a Discord server identified by the Discord Server ID 840291622989201429 and on the website http://www.communitymods.net.

69.     Defendant John Doe No. 14 a/k/a "ModdingPalace" is a reseller of the Ring -1 Cheat. Modding Palace operates in a Discord Server identified by the Discord Server ID 860613729283997696 and on a website at http://moddingpalace.com.

70.     Defendant John Doe No. 15 a/k/a "VincentPrice" is a reseller of the Ring -1 Cheat who uses the discord ID 1047673810859610112.

71.     VincentPrice is the current owner of the Palace Discord Server and the former owner of the CommunityMods Discord Server.

72.     Defendant John Doe No. 16 a/k/a "Esswan" is a reseller of the Ring -1 Cheat who uses the Discord ID 704983258164756531.

73.     Esswan is an administrator of both the Palace Discord Server and the CommunityMods Discord Server.

74.     Defendant John Doe No. 17 a/k/a "Admiral" is a reseller of the Ring -1 Cheat who uses the Discord ID 844081930789453825.

75.     Admiral is an administrator of both the Palace Discord Server and the CommunityMods Discord Server.

76.     Defendant John Doe No. 18 a/k/a "TomDickHarry" is a reseller of the Ring -1 Cheat who uses the Discord ID 847649540991090758.

77.     TomDickHarry is an administrator of the CommunityMods Discord Server.

78.     Defendant John Doe No. 19 a/k/a "Rob" is a reseller of the Ring -1 Cheat who uses the Discord ID 407238757071454208.

79.     Rob is an administrator of the Palace Discord Server.

80.     Defendant John Doe No. 20 a/k/a "StayLocked" is a reseller of the Ring -1 Cheat which operates in a Discord server with the Discord Server ID 1199422831923048529 and on

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 9

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   the website http://staylocked.org.

2       81.     Defendant John Doe No. 21 a/k/a "FiveStar" is a reseller of the Ring -1 Cheat

3   who uses the Discord ID 780117123384999947.

4       82.     FiveStar is the owner of the StayLocked Discord.

5       83.     Defendant John Doe No. 22 a/k/a "Horror" is a reseller of the Ring -1 Cheat who

6   uses the Discord ID 568256859870593034.

7       84.     Horror is a staff member for the StayLocked Discord.

8       85.     Defendant John Doe No. 23 a/k/a EliteCheatz.co is a reseller of the Ring -1 Cheat

9   via a Discord server with the Discord Server ID 766434924814663680 and a website at

10  https://elitecheatz.co/.

11      86.     Defendant John Doe No. 24 a/k/a Mihai Lucian is the owner of the EliteCheatz.co

12  reseller. On information and belief, Lucian is located in Dorohoi, Romania.

13      **D.    Newly Identified Operator Defendants**

14      87.     Defendant John Doe No. 25 a/k/a Nathan Bernard a/k/a "Dove," on information

15  and belief, is a member of the Ring -1 Enterprise who resides at 1417 Crossings Dr, Lithia

16  Springs, GA 30122.

17      88.     Bernard maintains a YouTube channel at https://www.youtube.com/@d0ve under

18  the name "thecheatingparty" (the "CheatingParty Channel").



focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

89.     On information and belief, Bernard is the author of a post on the blog platform Medium entitled "'Uncrackable' Cheats"[1] (the "Medium Article"), published on July 4, 2021.

90.     In the Medium Article, Bernard claims that he was "formerly a support staff for ring-1."

91.     Despite Bernard's representations that he has left the Ring -1 Enterprise, he has publicly engaged in an ongoing course of conduct suggesting that, even if he had left the Enterprise at some point, he has since rejoined.

92.     For example, the CheatingParty Channel features videos in which he demonstrates and promotes the Ring -1 Cheat, as seen in the accompanying live chat for the "Gatekeeping Gambit" livestream video:



93.     Many of these videos were produced during the time Bernard was operating the Ring -1 Twitch channel on behalf of the Ring -1 Enterprise under the name "ringoneio."

94.     Nearly every video on the CheatingParty Channel is of gameplay with the Ring -1 Cheat enabled, either alone or in concert with other cheats.

95.     Indeed, there seems to be no purpose to the CheatingParty Channel other than to advertise the Ring -1 Cheat.

96.     On information and belief, Bernard realizes a personal benefit from sharing these videos on his YouTube channel.

---

[1] https://web.archive.org/web/20240516204543/https://fluid.medium.com/uncrackable-cheats-2a3cb596f4f8

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 11

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

97.     Furthermore, Bernard's public postings suggest his intent to continue on this course of conduct, including his July 15, 2023 response to a comment suggesting that he could be banned and sued: "yeah I was named in the lawsuit, still doing it."



98.     Defendant John Doe No. 26 a/k/a "BlackMamba" is a forum staff member who uses the alias "BlackMamba" on the Ring-1 forums and the Ring-1 Telegram.

99.     Defendant John Doe No. 27 a/k/a "BillNye" is a forum staff member who uses the alias "BillNye" on the Ring-1 forums and the Ring-1 Telegram.

100.    On information and belief, the Ring-1 Operator Defendants frequently cycle their identities once named in legal documents in an attempt to evade liability for their ongoing course of conduct. It is therefore possible that multiple pseudonyms could refer to the same individual Operator Defendant.

**E.      Newly Identified Facilitator Defendants**

**1.      Banek192**

101.    Defendant John Doe No. 28 a/k/a "Banek192" a/k/a "Ivan M. Sergeevich" is a prolific reseller of the Ring-1 Cheat (among other cheats and hacks) who, on information and belief, operates or resides in Yekaterinburg, Russia, and who uses the username Banek192 on many platforms, websites, and other forums.

102.    Banek192 is the middleman of last resort – the source to whom purchasers are directed when they have no other way to purchase the cheat, either because of the purchaser's own resources or because the seller has lost access to their own preferred payment processors.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

103.    On information and belief, Banek192 has unusually persistent access to conventional payment methods and processors such as PayPal, despite the prohibition in those services' Terms and Conditions that forbids the use of their services to facilitate the purchase and sale of cheat software.

104.    On information and belief, Banek192's services revolve around accepting payments in USD from credit and debit cards via PayPal, taking a cut, and then converting funds to crypto or fiat currency such as Euros, US dollars, or rubles which are then deposited back to the cheat seller's accounts as a credit.

105.    On information and belief, the exchange of these funds is disproportionate to the value of the cheats sold to customers via the sites Banek192 transacts with.

106.    On information and belief, Banek192 realizes a material benefit from participation in the purchase and sale of the Ring -1 Cheat.

### 2.    **Shoppy**

107.    Defendant John Doe No. 29 a/k/a Shoppy Ecommerce Ltd ("Shoppy") is a private company registered in Israel with a Company Number of 515912517.

108.    Shoppy operates as a digital e-commerce platform available on the internet at http://www.shoppy.gg where the Ring -1 Cheat, among many other illicit and less-than-licit, products and services, is sold.

109.    Shoppy is notorious within the cheating community as a place to buy cheat software.

110.    Very little information is available about the corporate ownership of Shoppy, and there is very little contact information available outside of a single apparently all-purpose email address: support@shoppy.gg.

111.    Per Shoppy's website, "Our virtual headquarters is in Israel, but we're a fully remote team spread all over the world. Between us, we cover 2 continents, 3 nationalities 4 languages. All the work we do happens online, with no office to speak of."[2]

---

[2] https://web.archive.org/web/20231129211436/https://shoppy.gg/about/

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 13

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    112.    On information and belief, Shoppy does not have a registered DMCA agent.

2    113.    Emails sent to the support@shoppy.gg address have garnered no response.

3    114.    Email sent to the only other email address publicly disclosed in association with

4    Shoppy, legal@shoppy.gg, are returned as undeliverable.

5    115.    The "Documentation" link on the Shoppy website leads to shoppy.dev, a dead

6    domain with no content save for a "Domain for Sale" notice.

7    116.    On information and belief, Shoppy is aware of the nature of the products and

8    services sold on the platform.

9    117.    On information and belief, the dearth of owner, operator, and contact information

10   for Shoppy is part of a deliberate scheme to avoid detection and liability.

11   118.    On information and belief, Defendant John Doe No. 30 a/k/a Finn Grimpe a/k/a

12   "finndev" is the owner and operator of Shoppy.

13   119.    On information and belief, Grimpe is also the sole developer of the Shoppy API

14   and integration software, which sellers use to create their online stores and accept payments from

15   customers.

16   120.    Grimpe is a notorious fixture within the "black hat" hacking, cracking, and

17   cheating communities. He is the founder and administrator of Nulled.to, a longstanding hacking

18   site where members discuss and develop cheating software as well as viruses, worms, and other

19   malware.

20   121.    Grimpe is also the managing director of rpd.sh, a cloud services provider which

21   caters to those whose business practices – such as copyright violations, software piracy,

22   production and distribution of malware, and the distribution and sale of illegal drugs – are

23   banned by more mainstream service providers.

24   122.    Grimpe is also a cheat developer himself, having written (among others)

25   "Elobuddy", a cheat for the popular multiplayer online battle arena videogame League of

26   Legends.

27   123.    Doe Defendants Nos. 31-50 are persons and parties whose identities are currently

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 14

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

unknown to Bungie, but who, upon information and belief, are both complicit in Defendants'
torts and members in fact of Defendants' racketeering enterprise, including cheat developers,
resellers, administrators, and other agents of the enterprise.

## JURISDICTION AND VENUE

124.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§ 1331, in that Plaintiff asserts claims under federal law, including for copyright infringement,
civil RICO, and violations of the Digital Millennium Copyright Act and the Computer Fraud and
Abuse Act, and supplemental jurisdiction over Bungie's state law claims under 28 U.S.C.
§ 1367(a).

125.     This Court has personal jurisdiction over Defendants because Defendants
consented to jurisdiction in the state and federal courts in King County, Washington. Upon
information and belief, each of the Defendants, or agents acting on their and the Ring -1
Enterprise's behalf, accepted the terms of *Destiny 2*'s Limited Software License Agreement (the
"LSLA"), which contains the following forum selection clause: "you agree to submit to the
personal jurisdiction of any federal or state court in King County, Washington."

126.     Additionally, this Court has personal jurisdiction over all Defendants pursuant to
RCW 26.50.240, the Washington Long-Arm Statute, because the Defendants committed tortious
acts that caused Bungie injury in the State of Washington.

127.     Venue is proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the
events or omissions giving rise to the claims occurred in this judicial district and Defendants
have harmed Bungie in this judicial district, or, in the alternative, 28 U.S.C. § 1391(b)(3), in that
Defendants are foreign individuals and entities and therefore do not reside in a district within any
state, and, as such, if venue is not proper under 28 U.S.C. § 1391(b)(2), there is no judicial
district in which venue would otherwise be proper under Section 1391(b).

## BACKGROUND

### I.     The Destiny Franchise

128.     Bungie is the independent developer, owner, intellectual property rights holder,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

and distributor of the video game *Destiny 2*, and the *Destiny* Franchise.

129.    Wherever people congregate together and share spaces, they play together, tell stories, and socialize.

130.    Countless gamers prize this kind of interaction.

131.    Continuing what Bungie began with *Destiny* in 2014, *Destiny 2* scratches that itch. Consistent updates, multiple expansions, and constantly refreshed features engage players and keep the community thriving. With Player vs. Environment ("PvE") challenges that can be tackled solo or co-operatively, and Player vs. Player ("PvP") multiplayer modes pitting players against each other in a competition for in-game rewards and reputation, *Destiny 2* is played together by tens of millions of players around the world.

132.    Progress in *Destiny 2* is not delineated merely by success in its missions[3], quests[4], strikes[5], and raids[6]. Aesthetic rewards and loot, such as better and more powerful items for the player's character, are prizes for sustained play, repeated success, and the hard work a dedicated player puts into their gaming. Some rewards are exclusive to difficult or highly competitive endgame content, and can be shown off by players to other players in order to celebrate their achievements.

133.    However, where communities coalesce around online video games, bottom feeding cheaters who seek unearned victory and ill-gotten trophies, while destroying the gaming experience for everyone else around them inevitably follow.

134.    By artificially altering the game's mechanics and gameplay, cheaters thumb their noses at their fellow players and at the developers who labor to create a fair and positive experience for everyone. In a single player environment, using cheats and hacks impacts only one's own experience of that game. An MMO is different. Cheats and hacks in an MMO affect

---

[3] Campaigns designed to be tackled by 1-3 player teams, which feature a series of objectives.
[4] Multi-step missions that reward players with high-powered loot.
[5] Replayable missions through a series of objectives that end with a battle against a "boss" or other high-power enemy.
[6] Raids are highly challenging endgame PvE content designed to be completable only by groups of players working cooperatively.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

both other players as well as the game's creator.

135.    What's more, the cheat loaders - the software that deploys the various cheats and hacks into the game - can transform their unwitting users' personal computers into proxies for a slew of illegal activities and render them exceptionally vulnerable to malicious hacking.

136.    *Destiny 2*'s business model relies on players falling in love with the game and coming back for more. Players won't come back when their experience is rife with cheaters trivializing their hard work or victimizing them, or when they risk being banned or missing an opportunity for achievement because a teammate used a cheat[7].

137.    Bungie has expended tremendous time, resources, and effort attempting to counter cheat software such as that developed and sold by the Defendants. Bungie builds and licenses cheat detection tools (known as anti-cheat software) at significant cost, and Defendants repeatedly develop against *Destiny*'s anti-cheat software after each significant patch to avoid those anti-cheat measures. Honest players leave the game as their enjoyment of the experience diminishes – users do not want to play a rigged game they can't win without cheating or see their PvE accomplishments trivialized – and that costs Bungie additional revenue. And the money and human resources Bungie must dedicate to catching and preventing Defendants' illegal activity are a necessary but costly expense for a company dedicated to preserving the *Destiny* experience for its players.

138.    *Destiny* 2 is a shared-world online first-person shooter available across multiple platforms: Playstation 4 and 5, PC, and the Xbox One and Series X consoles.

139.    The *Destiny* Franchise has provided players with a thrilling story, a unique sci-fi setting, and beloved gameplay since it arrived on the market.

140.    Since their debut, *Destiny* and *Destiny 2* have been critical and commercial successes.

---

[7] Bungie invests significant labor in promoting a fair playing field for the highest levels of in-game achievement, which tends to coalesce around the race for completion of the newest end-game content.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

141.    *Destiny 2* is played by tens of millions of players worldwide.

142.    Since its initial release in 2014, the *Destiny* Franchise has offered its players continuous and consistent expansions and add-ons, which introduce new story content, new gameplay modes, new weapons and items, and new gameplay mechanics.

143.    Following the release of *Destiny 2* in 2017, Bungie continued this model, and has released several expansions, beginning with *Forsaken* and including the most recent, *Destiny 2: Lightfall*, with more on the way.

144.    To bridge the gap between these releases and to continue to provide its thriving player base with additional content to experience, *Destiny 2* also introduced Seasons, in which significant updates to the game are made alongside optional Season Passes that may be purchased to provide players with additional rewards.

145.    The sale of these continued expansions and passes, and of virtual currency that can be redeemed for cosmetic items in-game, serve as essential vehicles of *Destiny 2*'s revenue, as the base game has transitioned to a free-to-play model.

146.    For its core gameplay experience, *Destiny 2* offers both Player vs. Environment (PvE) content and Player vs. Player (PvP) content.

147.    PvE content allows players to explore *Destiny 2*'s worlds and lore and tackle an epic science fiction story. It pits players against the game itself, with each chapter of the saga and vibrant, distinct world it introduces filled with diverse and challenging enemies to fight, mysteries to explore, and items to collect, hunt, and chase down.

148.    *Destiny 2*'s PvE content can be tackled either single-player or cooperatively, allowing players to team up with other players.

149.    As *Destiny 2* is an always-online shared world, each player's game will always be populated and impacted by some number of other users, so a potential friend or ally is never too far away.

150.    Even where players are not attempting to tackle PvE content together – whether

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

from the outset as part of a planned team or as a result of being matched into an *ad hoc* fireteam[8] to complete a strike – other players in-game can and do attack enemies targeting other players, join in "public events" (mini-missions that feature waves of enemies in particular locations, with the promise of loot for successful completion) or otherwise impact the individual's gaming experience.

151.   PvP content presents a more traditional multiplayer experience, allowing players and fireteams to compete against each other.

152.   *Destiny 2* utilizes continuous and automatic matchmaking (computerized pairing of players for group content by analyzing availability, skill, and power level), making participation easy, and the competitive gameplay modes are typically quick and action-packed.

153.   Regardless of whether players are in PvP or PvE mode, *Destiny 2* gameplay centers around earning rewards to power up or enhance a player's character, enabling access to more content and more difficult challenges.

154.   As players complete quests, strikes, and raids they are rewarded with loot: gear, weapons, and other valuable items, the rarity and power of which can vary widely. Continued and consistent accomplishment in PvE endgame content and in PvP performance earns the player more than prestige in the community; it earns them the most powerful and impactful rewards the game offers.

155.   But *Destiny 2* is more than just another shooter with online components.

156.   No *Destiny 2* player is required to purchase anything at all to play the game; the base game is available to anyone, on most major gaming platforms, who wants to download it. Instead, players pay Bungie for additions to the base game: downloadable content including expansions (additional campaigns and storylines), seasonal content, in-game currency ("Silver," which players can purchase for real money and use in the *Destiny 2* world to "purchase" cosmetic items for their characters), and other in-game features and additions.

157.   In other words, unlike a boxed-game model which generates revenue by retailing

---

[8] Small squads of 2-6 players.

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 19

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

standalone versions of games, Bungie generates revenue from *Destiny 2* if and only if it is such a successful and immersive experience that users who play the base game for free find it so compelling and enjoyable that they want to buy the additional, optional content.

158.    Many consumers become disincentivized to buy the additional content if they believe that the game is dominated by unfair competition.

159.    Making *Destiny 2* free-to-play thus represented an enormous bet on the quality of the experience Bungie had developed and the enthusiasm of the community that had flourished around it.

160.    As such, cheat software such as Defendants', which harms honest users' gaming experience and thereby reduces the time they spend playing *Destiny 2* and their interest in purchasing additional content, has a direct and negative impact on Bungie's bottom line.

**II.    Bungie's Efforts to Prevent Cheating**

161.    Because cheating has such negative consequences to Bungie – financially and reputationally – and to its player community, Bungie expends considerable effort and resources to prevent it.

162.    First, Bungie's license agreement, which every user who downloads *Destiny 2* must agree to, expressly prohibits cheating. In executing the LSLA, players specifically agree that they will not, among other things:

- "hack or modify" the game;

- "receive or provide 'boosting services,'[9] to advance progress or achieve results that are not solely based on the account holder's gameplay"; or

- "create, develop, modify, distribute, or use any unauthorized software programs to

---

[9] Bungie users have Bungie accounts that they log in to in order to play *Destiny 2*, build statistics and accomplishments, and progress their characters. "Boosting services" typically involve a user paying a third party "professional gamer" to access their Bungie account and play *Destiny 2* for them, so that their character's progress instead reflects the work and skill of the "ringer" who accessed the account. Most such providers are likely not skilled: Bungie has detected significant overlap between boosting services and cheat software, enough that the price of cheat software appears to be a driver of the price of boosting services.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

gain advantage in any online or multiplayer game modes."

163.    Bungie bans players who use cheats or hacks.

164.    Bungie engages in a "defense in depth" approach to cheat detection and removing cheaters from its servers, using multiple layers of defense to protect *Destiny 2*.

165.    Bungie employs several measures to deny banned players from accessing *Destiny 2*, including rejecting attempts to log in from banned accounts, and incorporating measures to detect and reject attempts by banned players to create and play using new, fraudulently created accounts.

166.    One such measure is to check the Hardware ID ("HWID") of a computer that is connecting to the *Destiny 2* servers against a list of banned HWIDs.

167.    Bungie has developed cheat detection software.

168.    Bungie employs multiple specialists on their anti-cheat team.

169.    Over the years, and out of necessity as the ability to create free-to-play accounts drew more cheating, Bungie has expanded its anti-cheating efforts with additional resources and licensed anti-cheat tools.

170.    Bungie employs multiple security specialists who work with their anti-cheat team.

171.    In the absence of relief against these Defendants, Bungie anticipates that it will need to devote ever increasing personnel and resources to their anti-cheat efforts, incurring more costs.

172.    Bungie's anti-cheat team flags and identifies how cheaters are attacking the game through constant monitoring of the *Destiny 2* system and how players are interacting with it.

173.    Bungie's anti-cheat team must review and investigate reports of cheating submitted by *Destiny 2* players in order to remain informed as to how the cheaters are attacking the game.

174.    Bungie's anti-cheat team must routinely update the game client to mitigate and counter cheating.

175.    Bungie's anti-cheat team must routinely improve *Destiny 2*'s systems to make it

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 21

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

harder for cheaters to identify and attack game elements.

176.    Bungie expends significant effort balancing new anti-cheat measures with user experience and connectivity.

177.    For every security-related update, the anti-cheat team is routinely pulled into QA and support issues to identify actual issues from red herrings.

178.    By necessity, many of Bungie's anti-cheat team activities are reactive.

179.    Because it is a reactive process, Bungie's anti-cheat efforts require constant vigilance.

180.    That, in turn, requires continual investment in costly third-party tools.

181.    All this makes the cost of defending the *Destiny 2* system from cheaters exorbitant.

182.    Bungie spends seven-figures per year on its anti-cheat measures, a sum that does not include the cost to Bungie of external expert resources, legal costs, forward-looking investments in anti-cheat infrastructure, or infrastructure costs used for but not exclusively dedicated to game security.

## III.    **Defendants' Cheat Software**

183.    Defendants develop, market, and sell *Destiny 2* cheat software designed to circumvent Bungie's cheat detection efforts.

184.    There are Defendants, such as c52you and calc, who develop, invent, iterate, service, and test the Ring -1 Cheat Software. These are Developer Defendants.

185.    There are Defendants, such as David Brinlee, who resell the Ring -1 Cheat Software through different commercial channels and platforms. These are Reseller Defendants.

186.    There are Defendants, such as Shoppy, who host the Ring -1 Cheat Software, facilitate its sale, and profit from those commercial transactions. These are Facilitator Defendants.

187.    There are Defendants who administratively operate, support, market, and assist in the Ring -1 Enterprise and maintain its online community and commercial presence, such as Jose

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 22

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

DeJesus and Andrew Thorpe. These are Operator Defendants.

188.    Defendants continuously test and update their software to avoid detection.

189.    Upon information and belief, doing so requires the Ring -1 Enterprise to access and play *Destiny 2*.

190.    Upon information and belief, Defendants' cheat software utilizes an exploit in the Windows and Intel processor framework ("Hypervisor").

191.    Hypervisor, also referred to as a virtual machine monitor or virtualizer, is a type of computer software, firmware, or hardware that manages virtual machines and virtualizations.

192.    Virtual machines and virtualization provide users the ability to create and manage a sub-computer from within an existing computer, which can be used in the same way as the host computer but can be created and destroyed at will.

193.    Hypervisor is used to allow multiple sub operating systems to use and share hardware resources such as hard drive(s), RAM, processor(s), and graphics cards.

194.    The cheat software uses this exploit to turn off hardware protections and run a modified version of Hypervisor.

195.    The Ring -1 Cheat then runs within a virtualized environment to prevent detection by Bungie's anti-cheat measures.

196.    This exploit process is only available to customers playing *Destiny 2* on a Windows 10 or Windows 11 operating system with an Intel processor.

197.    This is because computer operating systems maintain system integrity through "protection rings" designed to give programs access to only functions and data that they need, ranging from Ring 0 (most privileged) to Ring 3 (least privileged), and which are typically enforced by the processor. Intel processers have an additional "Ring -1" protection ring that allows a virtual operating system to natively run Ring 0 commands as well as additional machine code instructions without affecting other virtual operating systems or the primary operating system.

198.    The Ring -1 Cheat gets its name from how it takes advantage of this Intel-only

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    protection ring.

2        199.    Upon information and belief, the modified version of Hypervisor relies on page

3    faults in memory.

4        200.    Upon information and belief, the modified version of Hypervisor catches the

5    memory exception normally handled by the operating system and uses it to run its own code and

6    generate new *Destiny 2* data.

7        201.    The falsified data is then passed to *Destiny 2*'s memory space to send to the main

8    *Destiny 2* servers.

9        202.    The Ring -1 Cheat Software contains four major components, one which provides

10   software-assisted boosting to aiming and targeting functions (the "Aimbot"), one that reveals

11   information normally hidden during gameplay (the "Character ESP"), one that provides a

12   customizable radar (the "Radar"), and one that modifies the basic mechanics of *Destiny 2*

13   gameplay (the "Misc").

14       203.    The Aimbot allows the cheat software to control the aiming and targeting system

15   used by *Destiny 2*.

16       204.    By and through this control, the Aimbot ensures that a player can lock onto and

17   hit any target the player wants.

18       205.    The Aimbot can be configured for fully automatic use or semi-manual control.

19       206.    The Aimbot cheat contains multiple features designed to prevent detection by

20   Bungie's cheat detection systems.

21       207.    This includes target switch delays after a kill, aim smoothing, and visibility

22   checks.

23       208.    As such, the Aimbot is a technology that is primarily produced for, and has

24   limited commercially significant use other than, circumventing a technological measure

25   controlling access to, and protecting Bungie's rights in, the *Destiny 2* game.

26       209.    The Character ESP cheat generates an overlay to the *Destiny 2* interface.

27       210.    Using the Character ESP cheat, a player can see both other players and non-player

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

characters ("NPC") that are further away than *Destiny 2* allows.

211.    Using the Character ESP cheat, a player can see both other players and NPCs through walls and other visual obstacles.

212.    This overlay contains information about both player characters and NPCs such as their health.

213.    This overlay presents the cheater with a game display – and experience – that is radically different from the one Bungie created and intended to display to players.

214.    Thus, the cheater is looking at a separate derivative display than the display presented by the game.

215.    A cheater is also experiencing a different audiovisual work than the work presented by the game.

216.    In order to enable the *Destiny 2* game to operate correctly and smoothly, that information has to be available within the *Destiny 2* client's memory space.

217.    But in order to maintain *Destiny 2*'s intended play-balance, that data cannot be visible to *Destiny 2* players.

218.    Moreover, the Character ESP cheat obtains the information it displays from the *Destiny 2* client's memory space.

219.    Thus, to accomplish both objectives, Bungie encrypts and obscures that data during the normal operation of the game, so that the program has access to it but the players and any malicious software on the players' computers do not.

220.    The Character ESP cheat breaches the protections Bungie has placed around that data in order to display an unauthorized overlay based on the data to the cheat user.

221.    As such, the Character ESP cheat is a technology that is primarily produced for, and has limited commercially significant use other than, circumventing a technological measure controlling access to, and protecting Bungie's rights in, the *Destiny 2* game.

222.    The Radar cheat provides an overlay to the *Destiny 2* interface with a 2D radar.

223.    The Radar cheat differs from Character ESP in that also shows the location of

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

enemies behind a player.

224.    This overlay also presents the cheater with a game display and experience that is not the one Bungie created and displays to its players.

225.    And, like the Character ESP cheat, it does so by accessing and de-obfuscating (or decrypting) Bungie's protected and obscured game data.

226.    As such, the Radar cheat is a technology that is primarily produced for, and has limited commercially significant use other than, circumventing a technological measure controlling access to, and protecting Bungie's rights in, the *Destiny 2* game.

227.    The Misc cheats allows the cheat software to bypass the mechanics of *Destiny 2*'s gameplay, removing key limitations Bungie uses to balance that gameplay.

228.    The Misc's Weapon cheat gives users infinite ammunition.

229.    The Misc's Weapon cheat removes all weapon recoil.

230.    The Misc's Weapon cheat has a rate of fire modifier, allowing a player to increase how quickly they fire.

231.    This includes a "full auto" mode.

232.    The Misc's Player cheat includes a speed hack, allowing a player to move faster than the game's mechanics allow.

233.    The Misc's Player cheat allows players to fly in areas where they would typically not be allowed to.

234.    The Misc's Player cheat allows a player to instantly revive after death.

235.    The Misc cheat includes a "ONE POSITION KILL" hack that allows a player to kill everyone, player and NPC, from a single position.

236.    The ONE POSITION KILL cheat has no limitations for visibility or obstacles between the player and target.

237.    The Misc cheat as a whole, and particularly the ONE POSITION KILL cheat, create a game experience and display that are radically different from that created by Bungie.

238.    As such, the Misc cheat is a technology that is primarily produced for, and has

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

limited commercially significant use other than, circumventing a technological measure

controlling access to, and protecting Bungie's rights in, the *Destiny 2* game.

239.     Many of these cheats are "streamproof," or designed to operate in the background

invisibly while the user streams video of their gameplay in order to hide from a viewing audience

that the player is cheating.

240.     These features, together and separately, provide players with a substantial

competitive advantage and the ability to appear like legitimate players in front of an audience.

241.     These features and the advantages they provide are not available to users who do

not cheat.

242.     Defendants sell their cheat software to users who buy monthly subscriptions to the

cheat software.

243.     Defendants develop and provide an additional cheat software known as the HWID

Spoofer + Cleaner ("HWID Spoofer").

244.     The HWID Spoofer allows a banned person to change the Hardware ID of their

computer to bypass the Hardware ID checks Bungie uses to restrict access to *Destiny 2*.

245.     The HWID Spoofer includes a Trace Cleaner.

246.     The Trace Cleaner is used to remove Trace information used by anti-cheat

mitigation software to detect previously banned players.

247.     In its totality, the HWID Spoofer is software created solely and intentionally to

allow banned players continued access to copyright-protected software and audiovisual works

they are barred from using by circumventing the technical measures Bungie imposes to prevent

their unauthorized access to *Destiny*.

248.     Defendants provide routine and specific support to the cheats they sell.

249.     Defendants, through social media and popular websites like YouTube, market and

advertise their cheats, inducing players to buy.

250.     For example, a YouTube video posted by Defendant "Sinister" as part of his

efforts to market the cheat for his personal profit contains a two-minute video that demonstrates

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  the separate cheats that are part of the Ring -1 package.[10]

2  251.    Defendants maintain a website that assures players that they are experienced and

3  long-term cheat developers.

4  252.    Defendants assure cheaters that their software is difficult to detect and that they

5  work around or bypass opposing anti-cheat measures.

6  253.    Upon information and belief, Defendants must play *Destiny 2* to develop and test

7  their cheats; they themselves are cheaters.

8  254.    Each cheater violates the LSLA every time they cheat.

9  255.    Each cheater circumvents Bungie's anti-cheating measures every time they cheat.

10  256.    By purchasing and loading cheats they have purchased from Defendants, cheaters

11  break the balance and integrity of *Destiny 2*'s gameplay.

12  257.    Cheaters find unearned success, quicker access to rewards, and overwhelming

13  advantage in competition.

14  258.    Defendants advertise their cheats to a wide audience.

15  259.    Defendants use "authorized resellers" to further propagate their cheats through

16  third-party wholesalers.

17  260.    Upon information and belief, Defendants propagate their cheats through:

18  Elitecheatz.co, Rev1ve.co, empirecheats.com, cobracheats.com, intensitygaming.xyz,

19  dynamicgaming.xyz, GoldenCheats.ru, Ringstore.me, cosmocheats.com, and Shoppy(dot)gg.

20  261.    Their cheats flagrantly alter and destroy the gameplay experience.

21  262.    Aimbots, display enhancements, and other cheats give significant competitive

22  advantages in PvP modes.

23  263.    Human players cannot compete with opponents who can operate outside not just

24  the rules of the game, but the confines of the game's software.

25  264.    These illicit competitive advantages bring unearned wins.

26  265.    Repeated success bought by cheating concentrates users at a level of gameplay

27  ―――――――――
[10] https://www.youtube.com/watch?v=0fO_PO26wKM

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

inhabited by the most invested of *Destiny 2*'s legitimate players.

266.   This concentration creates a perverse disincentive for the games' most dedicated players; the harder they work, the better they get, the more cheaters they face, and the less reward they can expect to achieve.

267.   This destroys the integrity of PvP gameplay modes, allowing cheaters to steal wins from more skilled players.

268.   Similar cheats can also trivialize endgame PvE content, making the game's most difficult enemies and raids simple.

269.   What once required community, discipline, skill, and innovation is reduced to a mere transaction for a cheater.

270.   Cheaters thus accumulate ill-gotten rewards, from the game's most powerful items to special in-game prizes and status symbols, to actual physical rewards through Bungie's Rewards program.

271.   Players attempting to obtain these accomplishments legitimately are aware that cheaters are cheating to obtain them.

272.   These players experience tremendous frustration.

273.   They write articles about *Destiny 2*'s "problem with cheaters."

274.   Sometimes, they stop playing *Destiny 2* altogether.

275.   Bungie's anti-cheat technological measures are developed to protect player data and game data, and to prevent outside influences from rewriting, changing, or manipulating any of the above.

276.   This anti-cheating technology is built into the game, requiring cheaters to circumvent it in order to cheat.

277.   The cost of cheating in lost players is significant.

278.   The cost of cheating in banned players is significant.

279.   The cost of cheating in the expense of policing cheating is significant.

280.   The cost of cheating in the expense of licensing and developing anti-cheat

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 29

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  technological countermeasures is significant.

2  **IV.**   **Defendants' Willfulness**

3       281.    Upon information and belief, Defendants are fully aware that their conduct is

4  tortious and illegal.

5       282.    Defendants take active steps to conceal their identities, including operating under

6  monikers, faking their own deaths, and using a middleman intermediary to payment processors.

7       283.    Upon information and belief, Defendants used Paydash as an intermediary

8  between Ring -1 and their customers.

9       284.    Upon information and belief, Paydash purported to act as a payment processor for

10  purchasing the Ring -1 Cheat directly from Ring -1's developers.

11      285.    Customers had to check a box acknowledging that they were not actually

12  purchasing from Ring -1, but rather from Paydash.

13      286.    Upon information and belief, this additional step was to obscure the nature of the

14  goods and services being sold.

15      287.    Upon information and belief, Paydash reported having £0 in assets upon filing for

16  insolvency in April 2022.

17      288.    Upon information and belief, all of Paydash's funds were being used to pay the

18  developers and staff of Ring -1.

19      289.    Upon information and belief, Defendants have gone to great lengths to hide their

20  identities in the misplaced belief that doing so would shield them from liability for their illegal

21  and tortious conduct.

22      290.    By June 2021, Bungie had sued one cheat developer (GatorCheats) and had sent

23  cease and desist letters to others.

24      291.    Upon information and belief, in July 2021, the Defendants closed their Discord

25  server.

26      292.    Upon information and belief, in August 2021, the forum accounts for

27  3 administrators (Berserker, Krypto, Overpowered) were deleted from the site.

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 30

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

293. Upon information and belief, these accounts were years old prior to deletion.

294. Upon information and belief, the deleted administrator accounts contained help guides and customer assistance communications.

295. As noted above, Bungie has obtained repeated and publicly known court decisions confirming as much, and upon information and belief Defendants are aware of those decisions.

296. Indeed, Bungie brought claims against other members of the Ring-1 Enterprise in July 2021, and these members were cut off like deadwood and left to fend for themselves by the Ring-1 Enterprise once publicly identified.

297. Upon information and belief, Defendants were specifically aware of that suit and have continued to develop, update, and sell the Ring-1 Cheat as members of the Ring-1 Enterprise.

298. Upon information and belief, the Ring-1 Enterprise has created multiple communication channels on Telegram (a mobile application for private encrypted messaging).

299. Upon information and belief, the Ring-1 Cheat is still available in Defendants' cheat loader.

300. Upon information and belief, the Ring-1 Cheat still loads successfully when activated through the cheat loader.

301. Upon information and belief, Defendants are still supporting the *Destiny 2* Ring-1 Cheat and making it available to users who previously purchased it.

302. Upon information and belief and given the nature of Defendants' cheat software and their subscription pricing model, the Ring-1 Cheat cannot load unless Defendants' server authenticates the user's keys and confirms the user has an active subscription.

## **FIRST CAUSE OF ACTION**

### **(Copyright Infringement)**

303. Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

304. Bungie is the holder of multiple copyright registrations for *Destiny 2*, including:

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 31

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Registrations No. TX 8-933-655, TX 8-933-658, and TX 9-130-251 covering the *Destiny 2*,

*Destiny 2: Beyond Light*, and *Destiny 2: The Witch Queen* software; Registrations No. PA 2-282-

670 and PA 2-280-030, covering *Destiny 2* and *Destiny 2: Beyond Light* as audiovisual works;

and Registrations No. TX 9-284-685 and PA 2-419-993 covering *Destiny 2: Lightfall*.

305.    Defendants' cheat software infringes Bungie's exclusive right to create derivative

works of *Destiny 2* in two ways.

306.    First, upon information and belief, Defendants' cheat software works via memory

injection, utilizing code designed to hook onto and hijack specific pieces of *Destiny 2* code

covered by Registration No. TX 8-933-655.

307.    Upon information and belief, Defendants' *Destiny 2* cheat software only works

within, and in conjunction with and as an emendation of, Plaintiff's copyrighted *Destiny 2* code.

308.    As such, Defendants' *Destiny 2* cheat software is a derivative work of *Destiny 2*.

309.    In addition, Defendants' *Destiny 2* cheat software creates visual elements that are

displayed as an overlay on, and within, the *Destiny 2* visual display.

310.    Indeed, Defendants' "ESP" feature creates a visual overlay on the *Destiny 2*

graphics, displaying for the cheater the location of enemies (including, in PvP mode, other

players), and other annotations and highlights absent from the display Bungie provides to

players.

311.    The combined audiovisual work displayed to the user by the interaction between

Bungie's *Destiny 2* software and Defendants' cheat software is based on Bungie's copyrighted

*Destiny 2* audiovisual work.

312.    As such, Defendants infringe Bungie's copyright in *Destiny 2* as an audiovisual

work each time that their cheat software creates an unauthorized derivative work of *Destiny 2*.

313.    When a player uses the speed or fly hack cheat, the positional data is sent to the

*Destiny 2* servers.

314.    The *Destiny 2* servers send this data to other players' *Destiny 2* clients.

315.    This positional data is then rendered onto those *Destiny 2* clients.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

316.    This includes the *Destiny 2* clients of players not using cheat software, who see the cheating player flying in places they should not be or moving faster than the game allows.

317.    In the alternative, Defendants induce and enable individual *Destiny 2* players to create an unauthorized and infringing derivative work each time they deploy the cheat software.

318.    Moreover, as alleged in Count Six below, Defendants' creation and distribution of *Destiny 2* cheat software was in violation of the Bungie LSLA.

319.    Upon information and belief, Defendants, or their agents, specifically downloaded *Destiny 2* for purposes of creating cheat software in violation of the LSLA.

320.    Because Defendants never intended to adhere to the LSLA terms, their initial downloads of *Destiny 2*, which enabled their creation of the cheat software, were unauthorized and infringing.

321.    Defendants' copyright infringement was knowing and willful.

322.    Upon information and belief, Defendants were aware at all times of the high probability that their creation of cheat software based on and in connection with Bungie's copyrighted *Destiny 2* software, and which annotated and amended the *Destiny 2* audiovisual display, infringed Bungie's copyrights.

323.    Defendants' infringement was for commercial gain.

324.    Defendants sell licenses to their cheat software for $59 per month for the basic package, $119 for the PRO package.

325.    The basic package comes with the Aimbot, Character ESP, and only the infinite ammo cheat from the Misc section.

326.    The PRO package comes with additional Aimbot, Character ESP, and Misc features.

327.    The rate of fire modifier, speed hack, fly hack, instant revive, and "One Position Kill" from the Misc cheats are only listed on the PRO package.

328.    The PRO package additionally comes with the Radar functionality.

329.    Upon information and belief, Defendants have sold more than $1,000 of cheat

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

software during at least one 180-day period.

330.    Bungie has incurred and will continue to incur enormous expense as a result of Defendants' copyright infringement.

331.    Bungie has lost considerable revenue as a result of Defendants' copyright infringement.

332.    As a result of the foregoing, Bungie is entitled to an award of actual damages in an amount to be proven at trial.

333.    Alternatively, Bungie is entitled to maximum statutory damages of $150,000 for each copyrighted work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

334.    Bungie is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

335.    As a result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to contribute to infringement of Plaintiff's copyrights. Plaintiff is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## SECOND CAUSE OF ACTION

### (Vicarious and Contributory Copyright Infringement, 17 U.S.C. § 101 *et seq.*)

336.    Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

337.    *Destiny 2*, along with its underlying source code, client files, screen displays, artwork, and other audiovisual elements, constitute original works of authorship and copyrightable subject matter under the laws of the United States.

338.    Bungie is the owner of, or has exclusive rights in, the copyrights in *Destiny 2*.

339.    Users of Defendants' Ring -1 Cheat Software for *Destiny 2* have copied, reproduced, adapted, and/or created derivative works from, and continue to copy, reproduce,

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 34

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

adapt, and/or create derivative works from, Bungie's copyrighted work, *Destiny 2*, without Bungie's consent.

340.     Users of Ring-1 Cheat Software directly infringe Bungie's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, when they install and use the Cheat Software.

341.     Defendants are liable as contributory copyright infringers because they intentionally induced, and continue to induce, the direct infringement of the Ring -1 Cheat Software users as described herein.

342.     All Defendants have actual knowledge of the infringing activity of the Ring -1 Cheat Software users.

343.     All Defendants engage in acts that induce, cause, or materially contribute to the infringing conduct of the Ring -1 Cheat Software users.

344.     Among other actions, Defendants induce users of Defendants' Ring -1 Cheat Software for *Destiny 2* to copy, reproduce, adapt, and/or create derivative works from Bungie's copyrighted works because when Ring -1 Cheat Software users download, install, and use the cheating software, they alter the gameplay and presentation of *Destiny 2*.

345.     Each component of the Ring -1 Enterprise materially contributes to the infringing conduct of the Ring -1 Cheat Software users.

346.     Developer Defendants materially contribute to the infringing conduct of the Ring-1 Cheat Software users by creating, testing, and supplying the Cheat Software.

347.     Reseller Defendants materially contribute to the infringing conduct of the Ring -1 Cheat Software users by supplying the Cheat Software to end users.

348.     Facilitator Defendants materially contribute to the infringing conduct of the Ring-1 Cheat Software users by knowingly providing Reseller Defendants with the means that allows them to sell the Cheat Software to end users.

349.     Operator Defendants materially contribute to the infringing conduct of the Ring -1 Cheat Software users by advertising the product, helping users find Reseller Defendants, and

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    providing technical support to end users.

2        350.    Defendants are liable as vicarious copyright infringers because they have the right

3    and ability to supervise and control the infringing activities that occur as a result of users'

4    download, installation, and/or use of Defendants' Ring -1 Cheat Software and, at all relevant

5    times, have a direct financial interest in the direct infringement of the Ring -1 Cheat Software

6    users.

7        351.    Developer Defendants can control the infringing activities by not creating, testing,

8    or distributing the Ring -1 Cheat Software.

9        352.    Developer Defendants have derived a direct financial interest from the

10   infringement by selling the software.

11       353.    Reseller Defendants can control the infringing activities by not selling the Ring -1

12   Cheat Software.

13       354.    Reseller Defendants have derived a direct financial interest from the infringement

14   by selling the software.

15       355.    Facilitator Defendants can control the infringing activities by not providing

16   marketplaces for the sale of the Ring -1 Cheat Software, or by making the software unavailable

17   when informed of its presence.

18       356.    Facilitator Defendants, on information and belief, receive a direct financial

19   interest from the infringement by receiving a portion of each sale, and/or by receiving funds from

20   advertising placed on their websites.

21       357.    Defendants refused, and continue to refuse, to take reasonably available steps to

22   stop the infringement.

23       358.    Defendants take active steps to encourage and facilitate the infringement by

24   providing support and advice regarding the download, installation, and use of the Ring -1 Cheat

25   Software to avoid detection by Bungie. Defendants' entire business model is based on

26   encouraging and facilitating the infringements by Ring -1 Cheat Software users.

27       359.    As a result, Defendants are vicariously and contributorily liable for the direct

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 36

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

infringement by Ring-1 Cheat Software users as described herein.

360.    Defendants' actions were and are intentional, willful, wanton, and performed in disregard of Bungie's rights.

361.    Bungie is entitled to injunctive relief pursuant to 17 U.S.C. § 502. Bungie has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) Bungie's copyrights are unique and valuable property which have no readily determinable market value, (b) Defendants' continued infringement harms Bungie such that Bungie could not be made entirely whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Bungie, is ongoing, and is perpetuated with every use of the Ring-1 Cheat Software.

362.    Bungie has been and will continue to be damaged, and Defendants have been unjustly enriched, by Defendants' unlawful infringement of Bungie's copyrighted works. Bungie is entitled to its actual damages and Defendants' profits, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).

363.    Alternatively, Bungie is entitled to the maximum statutory damages of $150,000 per infringed work for willful infringement pursuant to 17 U.S.C. § 504(c)(2).

364.    Bungie is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

### THIRD CAUSE OF ACTION

### (Civil RICO, 18 U.S.C. § 1962(a), (b), & (c))

365.    Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

366.    Defendants have derived income from a pattern of racketeering activity.

367.    Defendants have reinvested all or a part of that income in an enterprise which is engaged in activity affecting interstate commerce.

368.    The Ring-1 Enterprise, their agents, and employees, the related cheat sites they have operated, together with the participants in the "reseller" program and the Paydash payment

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

processor, for purposes of predicate acts of criminal copyright infringement, money laundering, and wire fraud, users of Defendants' cheat software, constitute an association-in-fact.

369.   Defendants have participated in the conduct of the Ring -1 Enterprise's affairs through the pattern of racketeering activity detailed below.

370.   The Ring -1 Enterprise is engaged in interstate commerce, as, upon information and belief, Defendants' sales are made to individuals in multiple States.

371.   The Ring -1 Enterprise is involved in foreign commerce, in that at least some Defendants are based in foreign countries and, upon information and belief, at least some of Defendants' sales are made to individuals in the United States.

372.   The Ring -1 Enterprise's activities affect interstate and foreign commerce, in that they affect Bungie's business.

373.   Defendants received income from the below described pattern of racketeering activity via the Ring -1 Enterprise's sales of Defendants' cheat software.

374.   Upon information and belief, at least some of the income so derived was reinvested in the Ring -1 Enterprise, to, among other things, fund the development, marketing, and sale of cheats, including the *Destiny 2* cheat software.

375.   Upon information and belief, Defendants maintain control of the Ring -1 Enterprise via the income derived from the below described pattern of racketeering activity.

376.   The Ring -1 Enterprise's pattern of racketeering activity is longstanding, continuing, and has targeted and damaged multiple businesses and game developers, including Bungie.

377.   Upon information and belief, the Ring -1 Enterprise's pattern of racketeering activity, conducted through other websites owned or controlled by Defendants, is more than three years old.

378.   Indeed, the Ring -1 Enterprise has developed and deployed cheats for the following other games, to name a few: *Rainbow 6 Siege* by Ubisoft; *Apex Legends* by Respawn Studios; *Dead by Daylight* by Behavior Interactive; *PlayerUnknown's Battlegrounds* by Krafton

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

and Microsoft Studios; *Escape from Tarkov* by Battlestate Games; *Valorant* by Riot Games; *DayZ* by Bohemia Interactive; *Hell Let Loose* by Black Matter; *Call of Duty: Black Ops Cold War* by Treyarch and Raven Software Corporation; *Call of Duty Vanguard* by Sledgehammer Games; *Call of Duty: Modern Warfare II* by Infinity Ward; *Rainbow Six Siege* by Ubisoft; and *Overwatch 2* by Blizzard Entertainment (collectively, the "Other Games").

379. Upon information and belief, the Ring -1 Enterprise's conduct with respect to the Other Games is similar to its conduct with respect to the *Destiny 2* cheat, and violates similar civil and criminal statutes.

**Predicate Acts:**

*A.      Wire Fraud (18 U.S.C. § 1343)*

380. The Ring -1 Enterprise's cheat software is an integral part of a scheme to obtain property from Bungie by means of false or fraudulent pretenses.

381. Users who wish to download the *Destiny 2* client software can only do so after indicating their agreement to the LSLA.

382. Each and every time Defendants downloaded the *Destiny 2* client software, they represented to Bungie their intent to comply with the LSLA.

383. Bungie relied on that representation in providing Defendants with the *Destiny 2* client software.

384. Each and every time Defendants represented their intent to comply with the LSLA, it was knowingly and intentionally false, in that Defendants had a then-present intent to breach the terms of the LSLA by developing and using the Ring -1 Cheat Software.

385. Moreover, each and every Ring -1 Cheat user who downloads the *Destiny 2* software while intending to use the Ring -1 Cheat makes the same representation, which is fraudulent for the same reasons, and which is relied upon by Bungie in providing the user with the *Destiny 2* software.

386. That is true not only for the initial download, but for the download of any update, expansion, season, or other DLC provided by Bungie.

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 39

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

387.    Defendants' use of the interstate wires in connection with this scheme is pervasive: in the initial download of *Destiny 2*, in, upon information and belief, email and telephonic communications during the development of their cheat software, in their web-based marketing, sales, and support for the cheat software, in the users' download of the cheat software, and in each individual use of the cheat software during a *Destiny 2* gaming session.

388.    Upon information and belief, Defendants' use of Paydash is to obfuscate the nature of consumer purchases.

389.    Upon information and belief, customers must agree that they are not purchasing a product from Ring -1, but from Paydash.

390.    This obfuscation layer allows Defendants access to traditional payment processors under false and fraudulent pretenses.

391.    Defendants' conduct is intentional.

392.    Indeed, Stripe, a popular payment processor, has multiple clauses in its Prohibited and Restricted Businesses policy that apply to Ring -1.

393.    One such clause reads: "Any other products or services that directly infringe or facilitate infringement upon the trademark, patent, copyright, trade secrets, proprietary or privacy rights of any third party".

394.    PayPal, a popular payment processor, likewise has multiple clauses in its Acceptable Use Policy that apply to Ring -1.

395.    One such clause reads: "You may not use the PayPal service for activities that: relate to transactions involving… items that infringe or violate any copyright, trademark, right of publicity or privacy or any other proprietary right under the laws of any jurisdiction".

396.    Coinbase, a popular cryptocurrency processor, likewise prohibits users from engaging transactions that "infringe or violate any copyright, trademark, right of publicity or privacy…".

397.    Indeed, the software and services offered by Defendants are in violation of traditional payment processors' terms and conditions.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

*B.      Criminal Copyright Infringement*

2

398.    As alleged above, Defendants' conduct constitutes criminal copyright

3

infringement under 17 U.S.C. § 506.

4

399.    Defendants infringed on Bungie's copyrights for their commercial advantage.

5

400.    Defendants' infringement was willful, knowing, and intentional.

6

401.    Defendants infringed on Bungie's copyrights for their private financial gain.

7

402.    Defendants have committed multiple acts of criminal copyright infringement,

8

over a significant period of time, with each instance of fraudulently downloading, developing a

9

"hack" for, and selling its cheat software for *Destiny 2* and each of the Other Games being a

10

separate instance of criminal copyright infringement.

11

*C.      Money Laundering (18 U.S.C. §§ 1956 & 1957)*

12

403.    In selling licenses to its cheat software, Defendants derived proceeds from

13

specified unlawful activity – the wire fraud and criminal copyright infringement alleged above.

14

404.    Upon information and belief, Defendants have utilized such proceeds to promote

15

the development and sales of their cheat software, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

16

405.    Upon information and belief, Defendants have engaged in monetary transactions

17

involving such proceeds in amounts greater than $10,000, in violation of 18 U.S.C. § 1957.

18

*               *               *               *               *

19

406.    As alleged above, Bungie has been significantly damaged by Defendants' pattern

20

of racketeering activity.

21

407.    Bungie has suffered reputational damage as a result of Defendants' cheat software

22

and scheme to defraud.

23

408.    Bungie has incurred significant expense as a result of Defendants' cheat software

24

and scheme to defraud.

25

409.    Bungie has lost significant revenue as a result of Defendants' cheat software and

26

scheme to defraud.

27

410.    As such, Bungie is entitled to an award of its damages, in an amount to be proven

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   at trial, treble damages and attorneys' fees as allowed under the RICO statute.

2   411.   In addition, Bungie is entitled to injunctive relief as authorized under 18 U.S.C.

3   § 1964(a), directing Defendants to cease marketing, selling, or supporting their *Destiny 2* cheat

4   software.

5   ### FOURTH CAUSE OF ACTION

6   **(Circumvention of Technological Measures, 17 U.S.C. § 1201(a) & (b))**

7   412.   Bungie repeats and realleges the allegations of all preceding paragraphs of this

8   Complaint as though fully set forth herein.

9   413.   Bungie is the owner and holder of all intellectual property rights and interests in

10  its games, including copyrights.

11  414.   Bungie protects its games with a "defense in depth" consisting of layers of

12  technological protection measures.

13  415.   These measures include checks such as passwords and related measures to ensure

14  that only authorized users access the games, but also a broad array of other technological

15  measures that the cheaters must breach after they log in and before their cheat can work.

16  416.   Bungie developed extensive anti-cheating technological measures that it put in

17  place precisely to curb the type of software Defendants develop, market, and use.

18  417.   Bungie's mitigation efforts are extensive and ongoing, incorporating efforts such

19  as monitoring player movements for unusually rapid or responsive behavior and validating

20  client-generated values to ensure that they are within expected ranges.

21  418.   Bungie's technological protection measures prevent users from accessing the

22  game if they are detected cheating at the game.

23  419.   Moreover, consistent with its intention of limiting access to *Destiny 2* to those

24  players who comply with the LSLA, Bungie bans accounts of players it catches cheating,

25  denying them further access to *Destiny 2*.

26  420.   Bungie's technological protection measures effectively control access to the

27  *Destiny 2* protected works.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

421. The use of the Ring -1 Cheat Software injures Bungie in violation of 17 U.S.C. § 1201(a)(1)(A).

422. Bungie also controls what data is and is not visible to *Destiny 2* users. While *Destiny 2*'s servers are aware at all times of the positions of every player and computer-generated enemy or obstacle, the *Destiny 2* client software does not provide all of this information to the player.

423. Instead, the *Destiny 2* client software renders this data in an intentionally imprecise fashion which has substantial implications for player strategy and behavior.

424. Moreover, consistent with its intention of limiting access to *Destiny 2* to those players who comply with the LSLA, Bungie bans accounts of players it catches cheating, denying them further access to *Destiny 2*.

425. Defendants manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes functionality, the sole purpose of which is to breach Bungie's technological protection measures, access its functions without authorization, and impair the integrity of the *Destiny 2* software and system.

426. Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes functionality solely to alter the artificial movements exhibited by player within the game when they are using Defendants' software, allowing these players' cheating to remain undetected by Plaintiff's anti-cheat mitigation technology.

427. Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software which includes the functionality solely to alter the Hardware IDs of a person's computer and remove anti-cheat tracing information, allowing banned players to create new *Destiny 2* accounts and remain undetected by Plaintiff's anti-cheat mitigation technology.

428. Defendants also manufacture, import, offer to the public, provide, or otherwise traffic in cheat software that alters the *Destiny 2* client on honest players' computers.

429. Defendants' software generates environmental anomalies via the speed hack, fly hack, and instant revival cheats.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

430.    The fraudulent data packets generated by these cheats are instantaneously sent to the *Destiny 2* servers purporting to be legitimate data.

431.    The *Destiny 2* servers then route those data packets to the clients of other *Destiny 2* players.

432.    The *Destiny 2* clients of non-cheating players then render the environmental anomalies.

433.    The result is that even players who are not using cheat software are able to visibly see the cheat in action.

434.    Circumventing Plaintiff's anti-cheat mitigation technology, which functions to control and limit access to *Destiny 2* either directly or by identifying to Bungie which accounts it must ban, is a primary function of Defendants' product.

435.    These features of Defendants' product have no commercially significant purpose beyond circumventing Plaintiff's anti-cheat mitigation technology.

436.    If Defendants' cheat software were to cease being effective in circumventing Plaintiff's anti-cheat mitigation technology, there would in turn cease to be a market for Defendants' cheat software.

437.    Defendants explicitly market their products as designed to circumvent Plaintiff's anti-cheat mitigation technology, which functions to control and limit access to their work.

438.    As alleged above, use of cheat software is a breach of the LSLA rendering any subsequent use of the *Destiny 2* game unlicensed and infringing.

439.    Defendants thus manufacture, import, offer to the public, provide, and otherwise traffic in a technology, product, service, and device primarily designed to circumvent protection afforded by technological measures that effectively protects Bungie's rights in *Destiny 2.*

440.    Defendants' manufacture, offer to the public, provision, and trafficking of the Ring -1 Cheat Software harms Bungie in violation of 17 U.S.C. §§ 1201(a) and (b).

441.    Defendants have the ability to control the use of the Ring -1 Cheat Software and have an obvious and direct financial interest in the exploitation of the cheats.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

442.     Defendants have knowledge of the activities of the users of the Ring -1 Cheat Software, and have induced, caused, and materially contributed to those activities.

443.     Defendants are secondarily liable for the harm caused by the circumvention of Bungie's technological protection measures carried out by the users of the Ring -1 Cheat Software.

444.     Defendants' conduct has caused, and will continue to cause, irreparable harm to Bungie.

445.     As such, Bungie is entitled to injunctive relief, an order directing the destruction of Defendants' *Destiny 2* cheat software, an award of statutory damages in the maximum amount of $2,500 per instance of Defendants' *Destiny 2* cheat software that Defendants sold or licensed, Defendants' profits attributable to their violations of 17 U.S.C. § 1201 pursuant to 17 U.S.C. § 1203(c), and Bungie's costs and attorneys' fees pursuant to 17 U.S.C. § 1203(b).

## FIFTH CAUSE OF ACTION

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B))

446.     Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

447.     The *Destiny 2* servers host the *Destiny 2* Server Software, which creates the virtual world of *Destiny 2*.

448.     The *Destiny 2* servers and software oversee the interaction of the player characters, non-player characters, and environmental elements of the game.

449.     Players must access *Destiny 2's* servers to connect to and play the game.

450.     In order to access *Destiny 2's* servers, players must install the *Destiny 2* client software provided by Plaintiff.

451.     In order to access *Destiny 2's* servers, players must use an unmodified *Destiny 2* client.

452.     The *Destiny 2* client software has no functionality other than to allow players to connect to the *Destiny 2* server software, enter the virtual world of *Destiny 2*, and play the game.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

453.     As part of this functionality, the *Destiny 2* client software collects and maintains data and information within its memory space about the position, characteristics, and actions of the player character, and communicates this information to the *Destiny 2* server software in an active and interactive fashion.

454.     Installation of the *Destiny 2* client software requires players to read and accept the LSLA.

455.     The LSLA expressly provides that "All title, ownership rights, and intellectual property rights in and to the Program and any copies thereof are owned by Bungie."

456.     The LSLA further expressly provides that "Your license confers no title or ownership in this Program, and should not be construed as a sale of any rights in this Program."

457.     The *Destiny 2* client software is directly related to and operates in conjunction with the *Destiny 2* servers and server software, both by virtue of their symbiotic function and under the terms of the LSLA

458.     The system consisting of the *Destiny 2* servers, the *Destiny 2* server software, the *Destiny 2* client software, and the data communications between them operates both interstate and internationally at all times and thereby operates in a manner affecting interstate and international commerce.

459.     The *Destiny 2* system, including the *Destiny 2* client software and the memory space it occupies, is therefore a protected computer.

460.     The *Destiny 2* clients on other player's computers are also protected computers.

461.     The LSLA protects the integrity of the *Destiny 2* system by prohibiting users from hacking or modifying the *Destiny 2* client software.

462.     Defendants, acting in concert with users who deploy their cheat software, obtain data from within the *Destiny 2* client software's memory space that the users are not authorized to access – specifically the positional information used in Defendants' "Character ESP" and "Radar" displays.

463.     Defendants, acting in concert with users who deploy their cheat software,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

generate false data and environmental anomalies and route it to the *Destiny 2* servers.

464.    The false data and environmental anomalies are then routed to the *Destiny 2* clients on other players' computers.

465.    Indeed, Defendants intentionally alter the *Destiny* 2 clients of other players with fraudulent data.

466.    In addition, Defendants are fully aware that users who deploy their cheat software do so in violation of the LSLA, and that access to the *Destiny 2* client software memory space by such users is entirely unauthorized.

467.    In accessing the *Destiny 2* client software's memory space without authorization, Defendants' software obtains information from the *Destiny 2* system to enable the presentation of the "Character ESP" or "Radar" displays on the users' computers.

468.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of the aiming function of the *Destiny 2* client software, enabling the player to fire with perfect accuracy every time.

469.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of and removes intentional limiting effects of *Destiny 2*'s gameplay such as weapon recoil, ammo count, and rate of fire.

470.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software takes control of and moves characters in a way that *Destiny 2* does not permit, such as increased movement speed and flying.

471.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, the cheat software causes other players in the vicinity of the cheat user to have their visual data altered to render characters moving in a way that *Destiny 2* does not permit or to experience upsetting gameplay outcomes that should be impossible in normal operation of the game.

472.    In addition, by accessing the *Destiny 2* client software's memory space without authorization, Defendants' software allows players to instantly revive with no delay.

AMENDED COMPLAINT
(Case No. 2:23-cv-01143-MLP) – 47

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

473.     In addition, by accessing the *Destiny 2* client software's memory space without authorization, the cheat software causes, other players in the vicinity of the cheat user to have their gameplay altered by a friendly or enemy player being revived with no delay.

474.     As a result of this conduct, Defendants' software endows cheating users with significant advantages not available to players who play the game honestly.

475.     Plaintiff has implemented security measures specifically to prevent players from accessing the protected memory spaces of the *Destiny 2* client or to send unauthorized game state information to the server necessary to make these illicit changes.

476.     Defendants' software bypasses and evades these security measures.

477.     These advantages enable cheating players to achieve results within the game, including within the game's highly popular and competitive PvP mode, which do not reflect their actual ability, skill, or investment of time and effort into the *Destiny 2* game.

478.     When the values stored within the *Destiny 2* client software's memory space which represent these fraudulent achievements are communicated to the *Destiny 2* servers, server software, and the *Destiny 2* clients of other players, these values become a trusted and accepted part of the game.

479.     The *Destiny 2* system takes actions based on these trusted but fraudulent values in ways that affect the cheating player and other players.

480.     This impairment to the integrity of the *Destiny 2* system and software is a direct result of the Defendants' unauthorized access to the *Destiny 2* system via the *Destiny 2* client software memory space.

481.     The fraudulent weapon functionality, movement, and instant revival data additionally impairs the integrity of *Destiny 2* data sent to unmodified *Destiny 2* clients in use by other players.

482.     Bungie has suffered a loss greater than the $5,000 statutory minimum in the costs of responding to Defendants' hacking.

483.     As such, Bungie is entitled to injunctive relief and an award of its compensatory

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

damages in an amount to be proven at trial.

## **SIXTH CAUSE OF ACTION**

### **(Breach of Contract)**

484.    Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

485.    The LSLA is a valid, binding contract between Bungie and each individual player of *Destiny 2*.

486.    *Destiny 2* cannot be played unless the user agrees to Bungie's LSLA.

487.    The LSLA is displayed in full for the user in the game client prior to the user's first play on a new account and after each major update, and must be accepted by the user in order to play.

488.    The LSLA is also made easily and readily available on Bungie's website.

489.    Defendants could not have developed their cheat software without playing *Destiny 2*.

490.    Upon information and belief, Defendants, or their agents acting on their behalf, agreed to the LSLA.

491.    The LSLA prohibits users from commercially exploiting the *Destiny 2* system or any of its parts.

492.    The LSLA prohibits users from "copy[ing], reproduce[ing], distribut[ing], display[ing] or us[ing] any part of [*Destiny 2*] except as expressly authorized by Bungie."

493.    The LSLA prohibits users from copying *Destiny 2* onto any hard drive or other storage device other than as occurs during the initial download.

494.    The LSLA prohibits users from "reverse engineer[ing], deriv[ing] source code, modify[ing], decompile[ing], disassembl[ing], or create[ing] derivative works of [*Destiny 2*], in whole or in part."

495.    The LSLA prohibits users from "hack[ing] or modify[ing *Destiny 2*], or create[ing], develop[ing], modify[ing], distribut[ing], or us[ing] any unauthorized software

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

programs to gain advantage in any online or multiplayer game modes."

496.    The LSLA explicitly warns users that "Any use of the Program in violation of the License Limitations will result in an immediate termination of your license, and continued use of the Program will be an infringement of Bungie's copyrights in and to the program."

497.    Upon information and belief, in developing, marketing, and selling their cheat software, Defendants have breached each and every one of those provisions.

498.    Defendants' sale of *Destiny 2* cheat software is a commercial exploitation of the *Destiny 2* system and parts of its software.

499.    Upon information and belief, as alleged above, Defendants' cheat software operates via memory injection, using a part of the *Destiny 2* software in a manner not authorized by Bungie.

500.    Upon information and belief, developing the cheat software required Defendants to copy the *Destiny 2* program onto additional hard drives or storage devices.

501.    Upon information and belief, developing the cheat software required Defendants to reverse engineer, derive source code, modify, decompile, and/or disassemble the *Destiny 2* program.

502.    As alleged above, Defendants' cheat software is a derivative work of the *Destiny 2* program.

503.    And, of course, Defendants' cheat software is an unauthorized program players use to gain advantage in *Destiny 2*'s online and multiplayer player game modes.

504.    Defendants have thus repeatedly breached the LSLA.

505.    Bungie has incurred and will continue to incur enormous expense as a result of Defendants' breaches of the LSLA.

506.    Bungie has lost considerable revenue as a result of Defendants' breaches of the LSLA.

507.    As a result of the foregoing, Bungie is entitled to an award of damages in an amount to be proven at trial.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## SEVENTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

508. Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

509. Defendants were generally and specifically aware that any *Destiny 2* user to whom they sold their *Destiny 2* cheat software was bound by the LSLA.

510. Defendants were aware that any player who used their *Destiny 2* cheat software would thereby breach the LSLA's prohibition on hacking or modifying *Destiny 2* to gain an advantage in its online and multiplayer modes.

511. Indeed, *Destiny 2* only provides online and multiplayer modes, and Defendants specifically marketed their cheat software as providing an advantage in such modes.

512. Moreover, Defendants were aware that their cheat software created a derivative work of *Destiny 2* each time its ESP feature was used, and therefore that their users' deployment of ESP would breach the LSLA.

513. Defendants induced every player to which they sold a cheat subscription to breach the LSLA each time such player used the cheat software.

514. Defendants induced and caused such breaches by allowing *Destiny 2* players access to their cheat software and providing support for such cheat software.

515. Additionally, Defendants induced and caused such breaches for *Destiny 2* players who were not customers of their Ring -1 Cheat.

516. Indeed, Bungie's LSLA contains a provision that "[a]ny ban or restriction for a player determined to be cheating or violating our Terms of Use may be applied to the entire fireteam of that player."

517. Because Defendants' creation and distribution of the cheat software was in violation of their own obligations to Bungie under the LSLA, they induced and/or caused the breaches by other *Destiny 2* users through improper means.

518. As a direct and proximate result of Defendants' actions, Bungie suffered damage

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

in an amount to be proven at trial, including but not limited to a loss of goodwill among users of Plaintiff's game, diversion of Plaintiff's resources to attempt to detect and prevent the use of the Cheating Software, and decreased profits.

## EIGHTH CAUSE OF ACTION

### (Civil Conspiracy)

519.    Bungie repeats and realleges the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

520.    The Ring -1 Enterprise is comprised of individual and corporate cheat retailers, developers, promoters, resellers, moderators, and additional support staff.

521.    Defendants agreed to act together in connection with the unlawful and tortious conduct described above.

522.    Upon information and belief, Defendants are aware of the wrongfulness of their conduct.

523.    This conspiracy directly harmed Bungie, through lost business, an injured reputation, and the significant expense of its anti-cheating measures.

524.    As a result of the foregoing, Bungie is entitled to an award of damages in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bungie, Inc., prays for the following relief:

A.    That judgment be entered in Plaintiff's favor against Defendants on all applicable claims;

B.    That Defendants and their officers, agents, representatives, servants, employees, heirs, successors, assigns, and all other requisite participants in Defendants' enterprise be preliminarily and permanently enjoined from:

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1          (1)      Infringing, inducing, or enabling others to infringe Bungie's copyrights;

2          (2)      Creating, writing, developing, advertising, promoting, and/or offering for

3    sale or otherwise any software that infringes Bungie's copyrights;

4          (3)      Descrambling, decrypting, avoiding, bypassing, removing, deactivating, or

5    impairing a technological measure that controls access to Bungie's copyrighted works;

6          (4)      Manufacturing, importing, offering to the public, providing, or otherwise

7    trafficking in any technology, product, service, device, component, or part thereof that is

8    primarily designed or produced for the purpose of circumventing Bungie's technological

9    measure(s) that effectively controls access to a work; That has only limited commercially

10   significant purpose or use other than to circumvent a technological protection measure that

11   effectively controls access to a work; and/or that is marketed by Defendants for use in

12   circumventing technological protection measure(s) that effectively control access to a work;

13         (5)      Manufacturing, importing, offering to the public, providing, or otherwise

14   trafficking in any technology, product, service, device, component, or part thereof that is

15   primarily designed or produced for the purpose of circumventing protection afforded by

16   technological measure(s) that effectively protects a right of Bungie in a work or a portion

17   thereof; that has only limited commercially significant purpose or use other than to circumvent

18   protection afforded by technological protection measure(s) that effective protect a right of

19   Bungie in a work or a portion thereof; and/or that is marketed by Defendants for use in

20   circumventing protection afforded by technological protection measure(s) that effective protect a

21   right of Bungie in a work or a portion thereof; and

22         (6)      Aiding or assisting another person or entity in any of the activities

23   described in (1) - (5);

24      C.      An order requiring that Defendants immediately destroy all copies of *Destiny 2* or

25   any derivative work thereof in their possession or control;

26      D.      An order requiring that Defendants immediately destroy all copies of any cheats

27   for *Destiny 2*;

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

E.      An order requiring Defendants to immediately and permanently disable all extant cheating software;

F.      An order forbidding Defendants from developing, manufacturing, and/or selling any cheats for any ensuing releases of Bungie titles;

G.      An award to Bungie of restitution and damages, including, but not limited to, compensatory, statutory (including enhanced statutory damages for willful infringement, and for RICO), punitive damages, and all other damages permitted by law;

H.      That Bungie be awarded pre-judgment and post-judgment interest on all damages awarded against Defendants;

I.      An award to Plaintiff of its costs incurred in this suit as well as reasonable attorneys' fees; and

J.      For such other relief as the Court deems just and proper.

Dated this 17th day of May, 2024.                Respectfully submitted,

KAMERMAN, UNCYK, SONIKER & KLEIN, P.C.

By: *s/ Dylan M. Schmeyer*
        Dylan M. Schmeyer (admitted *pro hac vice*)
        3598 E. 106th Avenue
        Thornton, CO 80223
        Tel: (719) 930-5942
        Email: dschmeyer@kusklaw.com

*Attorneys for Plaintiff Bungie, Inc.*

FOCAL PLLC

By: *s/ Stacia N. Lay*
        *s/ Venkat Balasubramani*
        Stacia N. Lay, WSBA #30594
        Venkat Balasubramani, WSBA #28269
        900 1st Avenue S., Suite 201
        Seattle, Washington 98134
        Tel: (206) 529-4827
        Fax: (206) 260-3966
        Email: stacia@focallaw.com
        Email: venkat@focallaw.com

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966